## CASTOR *v.* McDOLE.

[No. 11,416.   Filed January 30, 1923.   Rehearing denied May 9, 1923.   Transfer denied December 7, 1923.]

1.   BASTARDS.—*Acknowledgment after Marriage.—Statute.*—Under the provisions of the statute (§3001 Burns 1914), if a man marries the mother of an illegitimate child and acknowledges it as his own, such child is deemed legitimate, and it is immaterial whether the acknowledgment is at the time of the marriage or afterward; it is an open question in this state whether the acknowledgment can be made before as well as after the marriage.   p. 560.

2.   APPEAL.—*Bastardy.—Erroneous Instruction.*—In a partition proceeding in which the plaintiff claimed a right in the real estate by reason of the fact that the ancestor married her mother and acknowledged the plaintiff as his child, an instruction that if the acknowledgment was made *at* or after the marriage, denials of the acknowledgment at other times would not affect such acknowledgment, is not reversible error, although there was no evidence of acknowledgment at the time of the marriage, when the evidence showed a common-law marriage. p. 561.

3.   APPEAL.—*Bastardy.—Erroneous Instruction.—Cured by Other Instructions.*—In a partition proceeding in which the plaintiff claimed a right in the real estate by reason of the fact that the ancestor married her mother and acknowledged the plaintiff as his child, an instruction that the jury "had the right to consider" all the evidence on the subject of acknowledgment was cured by instructions telling the jury that it *must* consider all the acts and declarations of the decedent relating to that subject.   p. 561.

4.   BASTARDS.—*Acknowledgment.—Time of.—Statute.*—The statute (§3001 Burns 1914), does not require that the acknowledgment of an illegitimate child by the man who married its mother shall be made after the marriage and before the severance of the marriage relation by death or otherwise, and state-

ments made after the death of the mother are competent to show the acknowledgment.  p. 561.

5.  TRIAL.—*Bastardy.—Instruction.—Statute.*—In the trial of a partition proceeding in which the plaintiff claimed an interest in the land as the illegitimate child of the decedent who had married her mother and acknowledged the plaintiff as his own child, an instruction that persons may engage in a common-law marriage without any license and without any solemnization thereof, if there was, in fact, a common-law marriage, is not incorrect, and does not conflict with §8373 Burns 1914, as the intent of that statute is only to make clear that the failure to procure a license, to have the marriage formally solemnized, or to take any other formal step required by the statute, would not invalidate a statutory marriage if either of the parties thereto believed it to be a legal marriage.  p. 562.

6.  WITNESSES.— *Partition.— Heirs.— Competency.— Statute.*—A suit for partition of land belonging to an ancestor at his death is an action by and between heirs, and affects the property of an ancestor, to which §522 Burns 1914, §499 R. S. 1881, is applicable, and a party to the action is not a competent witness as to matters occurring before the death of the ancestor. p. 564.

7.  WITNESSES.— *Conversation with Decedent.— Competency.— Statute.*—Section 523 Burns 1914, §500 R. S. 1881, is limited to conversations and admissions of a party to the suit, his assignor or grantor, in the absence of the deceased, and the adverse party is bound by the statement of the witness that the conversation was had in the presence of the deceased. p. 566.

8.  WITNESSES.— *Conversation with Decedent.— Competency.— Statute.*—Under the provision of §523 Burns 1914, §500 R. S. 1881, where a witness has denied having a conversation with a decedent, the adverse party is not competent to impeach him by testifying that there was such a conversation.  p. 566.

9.  WITNESSES. — *Heirs. — Competency. — Statute.* — Section 522 Burns 1914, §500 R. S. 1881, is broader than §521 Burns 1914, §499 R. S. 1881, and does not limit the incompetency of a party as a witness to the *involved* "matter which occurred during the lifetime of the decedent", but provides that the party shall not be a "competent witness as to any matter which occurred prior to the death of the ancestor", and a party to the action is not a competent witness to prove by way of impeachment of a witness, that the witness had a conversation with the ancestor which the witness had denied was had.  p. 567.

10.  WITNESSES.— *Conversation with Decedent.— Competency.— Statute.*—Under the provisions of §523 Burns 1914, when a

witness has testified that he had a conversation with a party to the action in the absence of the ancestor through whom the party claims, the party is a competent witness to testify concerning that conversation, but not to some other conversation which he claims to have had with the witness but which the witness had not testified about. p. 568.

11. EVIDENCE.—*Pedigree.*—*Paternity of Child.*—In a partition suit, where the plaintiff claimed to be the illegitimate child of the ancestor who had married her mother and acknowledged the plaintiff as his own child, a witness may testify concerning a statement made by the mother of plaintiff that she had made a "mistake in her life; and that she was never married to J," but did marry the man who was claimed to have acknowledged the plaintiff as his own child, and that her husband was the father of her children. p. 569.

12. EVIDENCE.— *Pedigree.*— *Paternity of Child.*— Declarations concerning pedigree constitute an important exception to the rule excluding hearsay evidence, but such proof is restricted to the declarations of deceased persons who were related by blood or marriage to the person whose pedigree is the subject of investigation. p. 569.

13. APPEAL.—*Review.*—*Admission of Evidence.*—In a trial involving the paternity of the plaintiff, the admission in evidence of the certificate of a county clerk in a foreign state that there was no record in his office of the issue of a marriage license to the plaintiff's mother, without showing that there was any law in that state for the recording of such license, was harmless. p. 570.

14. TRIAL.—*Misconduct of Counsel.*—*Argument to Jury.*—In an action for partition, in which the plaintiff claimed to be the illegitimate child of the deceased owner of the land and that he had married her mother and acknowledged the plaintiff to be his child, where plaintiff's counsel, in the argument, made the statement to the jury that a named witness had testified that, before the death of decedent, he had a conversation with the defendant, in the absence of the decedent, in which she said the Lord had been good to her because decedent had made no will, that the defendant was competent to testify as to such conversation, but did not dare deny it, was not reversible error, although the appellant objected to this argument and moved the court to require the attorney to withdraw the statements, which was overruled. p. 570.

15. TRIAL.—*Misconduct of Counsel.*—*Argument to Jury.*—In an action for partition, in which the plaintiff claimed to be the illegitimate child of the deceased owner of the land and that he had married her mother and acknowledged the plaintiff to

be his own child, where plaintiff's counsel, in the argument to the jury, made the statement that plaintiff "was born at the home of a sister-in-law" of decedent; that she was born at the home of M, "who was a sister-in-law by marriage of Eli Stern (Decedent), and who knows but that Eli Stern paid her mother's expenses there" when the plaintiff was born, which statements were contrary to the evidence, is not reversible error, although the defendant objected to such statements and moved the court to instruct the jury to disregard each of the statements so made, which requests were refused, where the only objection to the statements was that they were "not true as to the relationship of Eli Stern." p. 571.

From Henry Circuit Court; *Fred C. Gause,* Judge.

Action by Georgianna McDole against Elizabeth Castor. From a judgment in favor of plaintiff, the defendant appeals. *Affirmed.*

*Meade Vestal, Robert S. Hunter, Gentry, Cloe & Campbell* and *Shirts & Fertig,* for appellant.

*Thomas E. Kane, George D. Forkner, Bagot, Free & Pence* and *Diven, Diven & Campbell,* for appellee.

McMahan, J.—This is an action by appellee against appellant for partition of real estate, for an accounting of rents and profits and to quiet title. Trial by jury resulted in a verdict for appellee, that she was the owner of an undivided one-half of the real estate, and for $1,000 damages and quieting her title.

Appellant appeals and assigns as error the overruling of her motion for a new trial.

Eli Stern died intestate in 1920, the owner of the real estate in controversy. His wife, Mary Stern, who was the mother of appellant and appellee died in 1914. Appellee claimed that she was an illegitimate child of Mary Fry, that after her birth Eli Stern married her mother and acknowledged her as his child. Appellant is the legitimate child of Eli Stern and his wife Mary. There being no contention that the verdict is not sustained by the evidence, we will not undertake to review

or to set out the evidence any further than may be necessary in discussing the contentions relied on by appellant for reversal.

Appellant's first contention is that the court erred in giving instructions Nos. 8 and 9. By the eighth instruction the jury was told that if it found from the evidence that appellee was the illegitimate child of Mary Fry, that Eli Stern married her mother and that he, at or after the marriage, acknowledged appellee as his child, she would be entitled to inherit a portion of his estate the same as if she had been born in wedlock to him and his wife, even though the jury should find that, at another time or times, either before or after such acknowledgement, he denied she was his child, or even though the mother had denied that she was illegitimate or that she was begotten by a former husband by the name of Charles Johnson.

By the ninth instruction the court, after calling attention to the fact that evidence had been introduced tending to show that Eli Stern had made statements that appellee was not his child, instructed the jury that it had the right to consider all the evidence upon this subject in determining whether or not he had at any time after his marriage to the mother acknowledged her as his child, and that if the jury found he had at any time, at or after his marriage to the mother, acknowledged her as his own, denials if any made by him at other times of such acknowledgement, could not affect such acknowledgement if once made.

Appellant says each of these instructions is erroneous because there was no evidence that he acknowledged appellee as his child *at the time* he married her mother. Conceding that there is no evidence that Eli Stern made such an acknowledgement *at the time* of the marriage, the giving of these instructions would not be reversible error.

There is some question under the evidence as to whether any marriage other than a common-law marriage ever took place between Eli Stern and Mary Fry. If they were married only under the common law, it would be rather difficult to tell just when that marriage actually took place. A further objection made to instruction No. 9, is that it tells the jury it had the right to consider all the evidence on the subject in determining whether he ever acknowledged her as his child. The contention is that the court should have told the jury that it *must* consider all the acts and declarations of Eli Stern relating to this subject. We do not think the instruction objectionable in view of the fact that the court did in other instructions specifically tell the jury that it *must* consider all the acts and declarations of Eli Stern on the question of acknowledgement.

The next contention is that instruction No. 11 is erroneous because it told the jury it had the right to take into consideration, in determining whether appellee was illegitimate, all the statements and declarations of Eli Stern concerning appellee and his relations with her mother. It is argued that this was erroneous because it authorized the jury to take into consideration statements made by Mr. Stern after the death of his wife, that such statements were not admissible on the subject of appellee's legitimacy because the family relationship did not exist between him and the mother after her death and that his statements after the mother's death were no more admissible on this question than if he had never married the mother.

The statute on this subject, §3001 Burns 1914, §2631 R. S. 1881, provides: "If a man shall marry the mother of an illegitimate child, and acknowledge it as his own, such child shall be deemed legitimate." The statute

does not expressly require that such acknowledgement shall be made after the marriage and before its severance by death or otherwise. Whether such acknowledgement can be made before as well as at or after the marriage is an open question in this state. See *Haddon* v. *Crawford* (1912), 49 Ind. App. 551, 560, 97 N. E. 811.

By instruction No. 26, the jury was told that persons may engage in what is known as a common-law marriage without any license and without any legal solemnization thereof, but that, in order to make such a marriage a legal marriage so as to legitimatize children, it must be entered into in good faith between the parties and be accompanied by such cohabitation and circumstances as will show that the parties in good faith entered into a marriage contract, and that such contract was not entered into for the purpose of veiling or concealing illicit intercourse.

Appellant contends that this instruction contradicts §8373 Burns 1914, §5330 R. S. 1881, which provides that: "No marriage shall be void or voidable for want of a license or other formality required by law, if either of the parties thereto believed it to be a legal marriage at that time."

The intent of the legislature as expressed in this section was to make it clear that the failure to procure a license, to have the marriage formally solemnized, or the failure to take any other formal step required by the act of which this section is a part, would not render a statutory marriage void or voidable if either of the parties thereto at the time of such marriage believed it to be a legal marriage. The purpose in view was not to change or affect the law as to what was necessary to constitute a common-law marriage, or to provide a rule of evidence as to what was or was not necessary to be proved to establish a common-law marriage. The "other formality" mentioned in the statute

concerning a statutory marriage similar to that found in §8362 Burns 1914, §5327 R. S. 1881, which requires the parties to procure a license. We fail to find any prejudicial error in the giving of this instruction.

Appellant contends that instruction No. 29, told the jury that in determining the question of whether appellee was the illegitimate child of Mary Fry and whether Eli Stern subsequently married the mother and acknowledged her as his child, it had the right to take into consideration the statements of deceased members of the family related by blood or marriage to Eli Stern, of and pertaining to said marriage, which had been introduced in evidence. The contention of appellant that this instruction authorized the jury to take into consideration the statements of deceased members of the family, of and concerning said marriage and birth in determining the question of acknowledgement is not well taken. The consideration of such statements was limited to the questions of marriage and birth. Statements of such persons as to whether Eli Stern had or had not acknowledged appellee as his child were not referred to in this instruction.

Appellant also contends that the court erred in giving other instructions, but after a careful examination of all the instructions given, we find no reversible error in any of them.

Appellant testified as a witness in her own behalf as to certain matters which occurred after the death of the father. One William Green had testified as a witness for appellee and, on his cross-examination, he was asked whether, prior to the death of Eli Stern, he had not made a certain statement. This statement, if made, would have had the effect of impeaching the witness and weakening the testimony he had given. The witness having denied making the statement, appellant was asked whether Mr. Green had made the statement

to her. An objection to her testifying upon this subject on the ground that she was not competent to testify as to any matter that had occurred prior to the death of the ancestor was sustained. She was also asked whether she had had a conversation with her mother in the absence of the father about appellee as to who was her father. An objection being made, she offered to prove that her mother stated to her that Charles Johnson was the father of appellee. The court also refused to permit her to prove that she had a conversation with her father in which he said the report that he was the father of appellee was false.

Section 522 Burns 1914, §499 R. S. 1881, provides, that: "In all suits by or against heirs or devisees, founded on a contract with or demand against 6. the ancestor, to obtain title to or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor."

A suit for partition is an action by and against heirs and affects the property of the ancestor. It has been frequently held in actions for partition that a party claiming the land is not a competent witness to testify against the other party. *Wiseman* v. *Wiseman* (1880), 73 Ind. 112, 38 Am. Rep. 115.

Appellant cites *Denny, Exr.*, v. *Denny* (1890), 123 Ind. 240, 23 N. E. 519, in support of her contention that she was competent to impeach the witness Green, and *DeHaven* v. *DeHaven* (1881), 77 Ind. 236, in support of the proposition that she was competent to testify on the question as to whether her father had acknowledged appellee to be his child.

In the DeHaven case the appellee was claiming to be an heir of Isaac DeHaven, deceased, and as such en-

titled to a share of his estate. The appellants in that case while examining one of their witnesses asked him the question: "State what you know, if anything, about your father ever recognizing Betsy, * * * as his child?" Appellee's objection that the question was leading was sustained by the trial court and on appeal this was held error. The only objection suggested was that the question was leading and the court in disposing of this objection, said: "* * * if the question is not justly subject to the objection stated, and we see no other even plausible ground of objection, the court erred in refusing to permit it to be answered." The question indicates that the witness was a child of the deceased ancestor, through which the appellant and appellee were claiming. We have taken occasion to examine the record in that case, and from it we find that the witness was not only a son of the deceased ancestor, but that he was a party to the issue being tried, that he had not been called by the adverse party, nor was he required to testify by the court trying the cause. It would therefore seem that the witness was incompetent to testify under the provisions of 2 R. S. 1876 p. 133, which provided that: "in all suits by or against heirs, founded on a contract with or demand against the ancestor, the object of which is to obtain title to, or possession of land or other property of such ancestor, or to reach or affect the same in any way neither party shall be allowed to testify as a witness as to any matter which occurred prior to the death of such ancestor, unless required by the opposite party or by the court trying the cause. * * *"

This provision of the statute evidently was not called to the attention of the court, nor was there any objection to the competency of the witness. Had such an objection been made and had the attention of the court been called to the statute, we doubt whether the court

would have used the expression, "and we see no other even plausible ground of objection." Such statement is clearly *obiter*. We do not, under the circumstances, think that case can be recognized as an authority in support of the claim that appellant was competent to testify to any matter which occurred prior to the death of the ancestor over an objection properly and seasonably made.

Section 523 Burns 1914, §500 R. S. 1881, provides among other things, "if any witness shall, on behalf of the executor, administrator, or heirs, testify 7, 8. to any conversation or admission of a party to the suit, his assignor or grantor, as having been had or made in the absence of the deceased; then the party against whom such evidence is adduced, his assignor or grantor, shall be competent to testify concerning the same matter." The witness Green had not testified to the conversation with appellant and inquired about having been had either in the presence or in the absence of the deceased. He denied that such a conversation took place and appellant is no more competent to testify that such a conversation did take place than she would be if the witness had testified to a conversation which he claimed was in the presence of the deceased, and it is well settled that in such cases the opposite party is bound by the statement of the witness that the conversation was had in the presence of the deceased. *Kibler, Admr., v. Potter* (1895), 11 Ind. App. 604, 39 N. E. 525, and authorities cited.

If the witness Green had testified to a conversation which he had with appellant in the absence of the deceased, appellant would have been a competent witness to testify as to that conversation. *Guthiel* v. *Dow* (1912), 177 Ind. 149, 97 N. E. 426; *Copeland* v. *Koontz, Admr.* (1890), 125 Ind. 126, 25 N. E. 174; *Martin* v. *Martin* (1889), 118 Ind. 227, 20 N. E. 763; *Atkinson*

v. *Maris, Admr.* (1907), 40 Ind. App. 718, 81 N. E. 745; *Nelson* v. *Masterton* (1891), 2 Ind. App. 524, 28 N. E. 731.

In *Denny* v. *Denny, supra,* the appellee had filed a claim against the estate of her deceased husband and had testified as to an alleged conversation between herself and one of the heirs. The heir claimed that the conversation took place in the presence of the decedent. It was held that this did not render the claimant incompetent, under §498 R. S. 1881, §521 Burns 1914, to testify concerning the matter. "The conversation," said the court, "having occurred between the claimant and one of the heirs, it was not a matter which occurred with the testator during his lifetime, within the meaning of the statute, nor did the conversation relate to the matter or transaction upon which the suit was predicated. It had no reference to the money here in controversy." The opinion fails to state what the witness had testified to or whether it was in rebuttal or otherwise.

Section 521 Burns 1914, *supra,* provides that in suits or proceedings in which an executor or administrator is a party, involving matters which occurred in the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate, any person who is a necessary party to the issue or record, whose interest is adverse to such estate shall not be a competent witness to such matters against the estate. It appears that the things about which such witness is not competent to testify are the matters involved in the suit or proceedings which occurred during the lifetime of the decedent. Section 522 Burns 1914, *supra,* is broader than §521 Burns 1914, *supra,* and does not limit the incompetency of the witness to the involved "matters which occurred during the lifetime of the decedent," but provides that

the party shall not be a "competent witness as to any matter which occurred prior to the death of the ancestor."

This section rendered appellant incompetent to testify as to "any matter" which occurred prior to the death of her father, and we do not feel that we can justify ourselves in overruling the plain words of the statutes. If we should hold under the facts in this case that appellant was a competent witness to impeach the witness Green, and thus allow her to testify to such conversations and statements which she might claim Green made to her when he had not testified to such conversations but had denied that any such conversations were had, it would permit her, through the guise of the cross-examination of a witness, to build up a straw-man, in the way of conversations that had never taken place, and then to go upon the witness stand and testify to such alleged conversations. Such a holding would break down and destroy the statute. If the witness Green had testified to a conversation which he claimed he had with appellant in the absence of the ancestor, appellant would, under §523 Burns 1914, *supra,* have been a competent witness to testify concerning that conversation. She would not, however, have been a competent witness to testify to some other conversations which she may have claimed she had with Green and which he had not testified about.

If *Denny* v. *Denny, supra,* is to be construed as holding that appellant was a competent witness to contradict or impeach the witness Green by testifying that a conversation took place, the taking place of which had been denied by Green, or to testify to the alleged conversations with her father and mother, it is certainly not in harmony with the more recent cases of *Copeland* v. *Koontz, supra,* and *Guthiel* v. *Dow, supra.* As was

Castor v. McDole—80 Ind. App. 556.

said by the court in the Copeland case at page 129: "Hence the statute under consideration, by its letter as well as by its spirit, limits the living party, in his testimony, to the conversation or admission about which the witness called against him may testify."

Said §522 Burns 1914, *supra*, rendered appellant incompetent to testify as to "any matter which occurred prior to the death" of her father, subject to the provisions of §523 Burns 1914, *supra*. We, therefore, hold there was no error in refusing to permit appellant to testify as to matters about which she was interrogated.

Appellant contends that the court erred in permitting a witness to testify concerning a statement made by the mother of appellant and appellee, wherein 11, 12. the mother said she had made a "mistake in her life, and that she was never married to Johnson but did marry Eli Stern, that said Eli was the father of her children."

Appellant concedes that declarations of deceased members of a family are competent to prove pedigree, but says that whether the declarations offered were trustworthy and whether necessity existed for their admission were questions for the court, and which the trial court wrongly decided.

In *United States* v. *Sanders* (1847), 27 Fed. Cas. (No. 16,220, Hemp. 483) 950, it was held that the declarations of a father as to the maternity of a child were admissible and competent evidence, but that the circumstances under which they were made, and the weight to be attached to them were matters for the jury to determine. See, also, *Alston* v. *Alston* (1901), 114 Iowa 29, 86 N. W. 55. It has also been held that an illegitimate child may testify that her deceased mother told her the name of her father. *Coker* v. *Cooper's Estate* (1915), 176 S. W. (Tex.) 145. Where the declarant is dead, his statement is not excluded by reason of the fact

that living members of the same family may be examined on the same point.  *Jarchow* v. *Grosse* (1912), 257 Ill. 36, 100 N. E. 290, Ann. Cas. 1914A 820.

The Supreme Court of this state held that declarations concerning pedigree constitute marked and important exceptions to the rule excluding hearsay evidence.   Such declarations are admitted upon the theory that they tend to show that the person to whom they refer was recognized and treated as one of the family. Proof of pedigree is restricted to the declarations of deceased persons who were related by blood or marriage to the person whose parentage is the subject of investigation.  The statements of an ancestor or deceased kinsman are not to be regarded as separate and distinct conversations, but are to be taken as a connected and indivisible thing indicating the treatment of the person whose pedigree is in dispute.  *DeHaven* v. *De-Haven, supra.*   There was no error in admitting this evidence.

Appellant next contends that the court erred in admitting in evidence the certificate of the clerk of Champaign county, Illinois, to the effect that there was 13. no record in his office of a marriage license issued to Eli Stern and Mary Fry or Mary Johnson, for the reason that it was not shown that there was any law in Illinois for the recording of such license.   No such objection was made in the trial court to the introduction of such certificate in evidence.   Appellant did object to the admission of such certificate in evidence, but not for the reason urged on appeal.   The error, if any, in admitting this certificate was harmless.

One of the attorneys for appellee, in the opening argument to the jury, after quoting testimony of William Green to the effect that before the death 14. of Eli Stern, he had a conversation with appellant, in the absence of Mr. Stern, in which ap-

pellant asked the witness if her father had made a will, and, on being informed that he had not, that appellant replied, saying, "The Lord has been good to me," and the attorney continuing his argument asserted that appellant was a competent witness to deny this conversation, but did not dare deny it. The record shows that appellant objected to this argument and moved the court to require the attorney to withdraw the same on the ground that the court had, at the instance of appellee, held appellant was not a competent witness to testify to anything occurring during the lifetime of Eli Stern, whether in his presence or absence; that thereupon the court stated that in view of the objections made by appellee to the competency of appellant as a witness, her counsel was justified in not offering her as a witness to deny such conversation, but allowed the attorney for appellee in his argument to persist in his contention before the jury that she was competent to testify in that particular instance and to comment on her failure to do so as an admission of the truth of the testimony of the witness Green. The objection of appellant to this argument, as well as to the motion to have the same withdrawn was overruled, and no instruction was at any time given the jury directing the jury to disregard this argument.

Another one of appellee's attorneys in making the closing argument to the jury said: "The plaintiff, Georgianna McDole, was born at the home of a sister-in-law of Eli Stern," and that she "was born at the home of Mrs. Henley McKinzie, who was a sister-in-law by marriage of Eli Stern, and who knows but that Eli Stern paid her expenses there when Georgianna was born." Thereupon one of appellant's attorneys stated that there was no evidence tending to show any such relationship between Eli Stern and Mrs. McKinzie, and the judge, in response to such statement,

and, in the hearing and presence of the jury, said he "did not remember what the evidence showed the relationship to be, but he did not remember it that way, but that the jury would remember what the evidence did show." Appellant objected to this argument and moved the court to instruct the jury to disregard it and to withdraw it from the jury. This motion being overruled, appellant thereupon, and before the close of the argument, in writing requested the court to instruct the jury to disregard each of the statements so made. These requests were refused and exceptions saved.

The evidence concerning when Eli Stern first became acquainted with Mary Fry is anything but conclusive. One of appellant's witnesses, a brother of Mary Fry, testified that when he first knew Eli Stern he was going with her and that appellee was probably six months old. Another witness testified that he became acquainted with Eli Stern in 1864, that he first met Mary Fry at a picnic with Eli Stern in July or August, 1865, that Eli Stern brought her to the dance. The witness Green, heretofore mentioned, testified that Eli Stern told him that he first began to go with Mary Fry in 1865; that they met at a dance, and attended several dances together and that from that time she was his "lady friend;" that they decided in 1866 to get married but that his mother objected and Mary said they would wait and after that appellee was born. This witness also testified concerning a statement which he said Eli Stern made to him, and which, if the witness is believed, would justify an inference that Eli Stern was the father of appellee, and that the mother, Mary Fry, called her Georgianna Johnson to protect Eli Stern on account of his being younger than she and so people would not talk about him being the father of her child and not marrying her.

Other witnesses testified that Mary Fry had left In-

diana when a child, going with her parents to Kansas; that she afterwards lived in Iowa, that, in the summer of 1865, she returned to this state and to the neighborhood where she lived as a child, with a man named Charles Johnson whom she introduced to her relatives and friends as her husband. She and Johnson, who claimed to be a soldier, visited with her relatives for a few weeks after which they went to Indianapolis. Johnson said he had to report at Camp Morton. Mary Fry returned some time later and reported that Johnson had deserted her at Indianapolis. On August 14, 1866, she gave birth to appellee at the home of her uncle, Henley McKinzie, whose wife was a sister of a brother-in-law of Eli Stern. The evidence relating to whether appellee was the legitimate or illegitimate child of Mary Fry and whether, after her mother married Eli Stern, the latter acknowledged appellee as his child, is in irreconcilable conflict. There is no conflict in the evidence as to where appellee was born. Eliza Woods, a sister of Eli Stern, testified that appellee was born at the home of one Mrs. Henley McKinzie, who was a sister of Mrs. Wood's husband.

The statement of appellee's counsel in his argument to the jury that appellee was born at the home of a "sister-in-law of Eli Stern" or at the home of a "sister-in-law by marriage of Eli Stern" was not a correct statement of the evidence; but, in view of the fact that there was no conflict in the evidence as to where she was born and the evidence being clear and undisputed that Mrs. McKinzie was the sister of the husband of a sister of Eli Stern, the jury could not have been misled or prejudiced by such statement in relation to Mrs. McKinzie being a sister-in-law, or a "sister-in-law by marriage" of Eli Stern. No specific objection was made to the statement, "and who knows but that Eli Stern paid her expenses there." Appellant thereafter, and

during the course of the argument, in writing requested the court to instruct the jury that there was no evidence showing or tending to show that Mrs. McKinzie was a sister-in-law "by marriage" of Eli Stern and that the jury therefore should disregard the statement "that Georgianna McDole was born at the home of Mrs. Henley McKinzie, who was a sister-in-law of Eli Stern, and who knows but that Eli Stern paid her expenses there." The reason given by appellant in support of her request for this instruction was that "the argument was not true as to the relationship of Eli Stern." It appears that the part of the argument to which appellant was really objecting was the statement of the relationship of Mrs. McKinzie to Mr. Stern and not to the statement relative to the payment of the expense. A careful consideration of the record convinces us that counsel for appellee were not guilty of such misconduct as amounts to reversible error.

Judgment affirmed.