STATE OF INDIANA *v.* SCHALLER ET AL.

[No. 16,889. Filed April 14, 1942.]

*George N. Beamer,* Attorney General, and *Walter O. Lewis,* Deputy Attorney General, for the State.

*Nippert & Nippert,* of Cincinnati, Ohio, *Arthur H. Sapp* and *U. S. Lesh,* both of Huntington, for appellees.

BEDWELL, P. J.—In this action the appellees sought to make proof of the fact that they were heirs of Christian Schneider (Snyder), deceased, and as such entitled to receive his estate on final distribution.

Christian Schneider (Snyder) died intestate on the 24th day of April, 1928, while an inmate of the Central Hospital for the Insane at Indianapolis, Indiana, and while a resident of Huntington County, in the State of Indiana. Administration was duly had upon his estate, and on the 12th day of January, 1933, the administrator thereof filed his final report, which was by the Huntington Circuit Court approved, and the administrator discharged. Upon the filing of such report he paid into the clerk of such court the sum of $4,652.78 to be held until further order of such court. At the time of his death Christian Schneider (Snyder) had never been married and he left no known heirs surviving him in the United States. The appellees herein who are claiming to be the sole surviving heirs at law of such decedent are supposed to be persons residing in Europe and mainly in Switzerland.

No further steps were taken after the filing of such final report by such administrator for the distribution of the remaining assets of the estate of decedent until August 4, 1939, when an attorney purporting to appear in behalf of appellees filed a petition in proof of heirship in which it was alleged that the petitioners were the sole and only heirs at law of such decedent and entitled to the fund then held in trust by the clerk of such court. Thereafter, a supplemental petition on behalf of appellees was filed by Alphonse Biber, a consul of Switzerland, of Cincinnati, Ohio, as attorney in fact for appellees. This supplemental petition was

similar to the original petition but it was verified by such consul and set forth more details concerning the decedent and the names, location and relationship of his heirs at law.

After the action to make proof of heirship was instituted, the State of Indiana, by its attorney general, made a demand upon the clerk of the Huntington Circuit Court for the payment to it of the money remaining in the possession of such clerk. This demand was made under the provisions of ch. 18, p. 27, of the Acts of 1913 (§§ 6-1509 to 6-1512, Burns' 1933). The appellant, also, by its attorney general, filed a petition to be made a party defendant to the pending action and such permission was granted. No answer was filed by appellant to the original petition or supplemental petition of appellees.

The matter was submitted to the court for trial and determination; and on the 1st day of April, 1941, such court made a finding that the appellees named herein were the heirs and only heirs at law of Christian Schneider (Snyder), deceased, and that they were entitled to inherit his estate in proportionate shares therein designated. Judgment was then duly rendered upon such finding; and thereafter, and on April 23, 1941, the State of Indiana filed its motion for a new trial which was overruled by the trial court, and appellant has assigned the overruling thereof as one of the errors relied upon for reversal. The particular grounds of such motion upon which appellant is relying are in substance as follows:

1. For abuse of its discretion by the court in overruling the written motion of the State of Indiana to require W. B. Waddell to make proof of his authority as an attorney at law to represent the alleged petitioners in this cause.

2. For abuse of discretion by the court in overruling the appellant's written motion to require the petitioners to provide a proper and sufficient undertaking for court costs as nonresidents of the State of Indiana, before a final judgment in this cause.

3. For irregularity in the proceedings of the court prior to the trial and by which the State of Indiana was prevented from having a fair trial in this, to wit:

That the court erroneously overruled the motion of the State of Indiana to set aside and vacate its order of August 4, 1939, in setting aside the judgment in final settlement, and in reinstating said estate of Christian Schneider, deceased, upon the docket of said court and the further administration of the said estate.

4. For error of law occurring at the trial and excepted to by the State of Indiana in receiving in evidence over the objection of the State of Indiana of a prepared typewritten tabulation said to have been compiled from certain official records and documents of the Swiss Confederation as to the pedigree and relationship of the petitioners to the decedent, Christian Schneider, referred to and identified as Exhibit K.

5. That the decision of the court was not sustained by sufficient evidence.

6. That the decision of the court was contrary to law.

The appellant has no interest or rights in the assets of the estate of Christian Schneider (Snyder), except in the event he died without heirs who were capable of taking the net proceeds thereof under the law upon final distribution. Some of the questions attempted to be raised by appellant could not harm it, and particularly would this be true if decedent left him surviving lawful heirs capable of inheriting his estate. We will therefore consider first the controlling question, which is, whether

the evidence was sufficient to sustain the finding of the trial court to the effect that the appellees are the heirs, and the only heirs, at law of said Christian Schneider (Snyder), deceased.

The only evidence introduced at the trial in proof of appellees' claim of heirship was the instrument designated as Exhibit K. The appellant objected to the introduction thereof on the ground that it was tabulated evidence and was only hearsay and was not the best evidence; that it did not purport to be the official record by the authorized officials of the Swiss government, but it was a tabulation or interpretation taken from certain records which were not in evidence and which were not shown to be such public records as were required to be kept by the Swiss government or by the officers thereof. This objection was overruled by the trial court with an exception to the appellant.

An examination of Exhibit K discloses that it purported to be a "List of Heirs in the Matter of Christian Schneider, born November 7, 1848, at Bern (Buempliz)." It recited that the decedent had two sisters and gave their names and place of birth. It gave the name and date of baptism of the parents of decedent and then contains the following statement:

"There are no heirs of the paternal branch of the grandparents. There are, however, some of the maternal branch of the grandparents."

Then follows a tabulated statement setting forth the names and pedigree of the descendants of certain named sisters and brothers of the mother of the decedent. At the close of the document there is this statement:

"This list of heirs was executed on the strength of official extracts and records of the Registrar's office. Bern, May 31, 1940.

> "The Director of Justice
> (name illegible)
> "Certified by the Chancellery of the Canton of Bern for the Chancellor
>> (Signed) Hubert
>
> "Seal of the
>   Chancery of the
>   Canton of Bern"

The instrument then has attached a certificate of the Vice Consul of the United States of America at Bern, Switzerland, that Mr. Hubert whose name was subscribed to the document was at the time of subscribing the same secretary of the Chancellery of the Canton of Bern, Confederation of Switzerland, duly commissioned, and that full faith and confidence were due to his acts as such. The instrument or document was in the German language but a translation thereof was attached thereto.

No evidence was introduced to show the contents of any of the laws of Switzerland. It was not shown that the registrar's office was a governmental office as distinguished from a church office or a private office, nor was anything shown about the power, rights or duties of the Director of Justice whose signature seemingly is attached to the particular instrument. The instrument does not purport to be a copy of any record, public or private, kept in Switzerland. It purports to be a tabulation made by the Director of Justice from official extracts and records of the registrar's office.

Professor Wigmore, in his work on "Evidence," 3d Ed., Vol. 5, § 1362, in discussing the theory of the hearsay rule, uses the following language:

> "The theory of the Hearsay rule is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best

brought to light and exposed by the test of Cross-examination. . . . It is here sufficient to note that the Hearsay rule, as accepted in our law, signifies *a rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of Cross-examination.*"

In his discussion of exceptions to the hearsay rule in § 1424, of the same volume, he uses the following language:

"The Hearsay rule is merely an additional test or safeguard to be applied to testimonial evidence otherwise admissible. The admission of hearsay statements, by way of exception to the rule, therefore presupposes that the assertor possessed the *qualifications of a witness* . . . in regard to knowledge and the like. These qualifications are fundamental as rules of Relevancy. Thus these extra-judicial statements may be inadmissible because of their failure to fufil the ordinary rules about qualifications, even though they meet the requirements of a hearsay exception. For example, in the Pedigree Exception there are rules about membership in the family which rest solely on the necessity of knowledge in the person whose statement is offered, —i. e. a rule of Testimonial Qualifications."

A time-honored exception to the hearsay rule exists in respect to proof of matters of family history, relationship, and pedigree. Evidence of this character is admitted because it is the best the nature of the case admits and because greater evils are apprehended from the rejection of such proof than from its admission. One of the conditions upon which family traditions are received in evidence is that it emanate from a source within the family, and from persons having such a connection with the party to whom it relates that it is natural and likely that they cannot be mistaken and will speak the truth. The rule which permits declarations to be admitted in respect to matters

of family history refers to the declarations of deceased persons. 20 Am. Jur., Evidence, § 468, p. 409; *DeHaven* v. *DeHaven* (1881), 77 Ind. 236; *Metropolitan Life Ins. Co.* v. *Lyons* (1912), 50 Ind. App. 534, 98 N. E. 824; *Castor* v. *McDole* (1923), 80 Ind. App. 556, 148 N. E. 643.

Documentary evidence, when offered, is subject to the same rules of evidence in respect to relevancy, competency, or materiality, as is oral testimony. Under the general principle which excludes hearsay testimony, a document which ranks no higher in the scale of evidence than hearsay, should not be received as evidence where better testimony can, from the nature of the case, be had. It is a well settled general rule that the existence and contents of documents or records in the custody of a public officer cannot be proved merely by the officer's certificate of the substance, contents or legal effect of such documents or record. Ordinarily public officers who are custodians thereof are authorized only to certify to the correctness of copies of those records and documents, and any other form of a certificate is inadmissible. A certifying officer has no authority to state facts explanatory of, or collateral to, the records certified by him or to state mere conclusions not required to be certified. Such certificates, as a public officer is required by law to execute and is authorized by statute to make, are receivable under the documentary evidence rule as an exception to the hearsay rule for the purpose of proving the facts stated, provided such certificates are properly authenticated. *Wright* v. *Bundy* (1858), 11 Ind. 398, 407; *Daggett* v. *Bonewitz* (1886), 107 Ind. 276, 7 N. E. 900; *Belford* v. *Scribner* (1892), 144 U. S. 488, 36 L. Ed. 514, 12 S. Ct. 734; *People* v. *Reese* (1932), 258 N. Y. 89, 179 N. E. 305, 79 A. L. R. 1329; *United States* v.

*McCoy* (1904), 193 U. S. 593, 48 L. Ed. 805, 21 S. Ct. 528.

In the case of *National Surety Co.* v. *State, ex rel.* (1922), 192 Ind. 412, 416, 136 N. E. 569, an attempt was made to introduce into evidence a certified and authenticated copy of a reinsurance contract obtained from the insurance department of the state of New York. In discussing the admissibility thereof the Supreme Court said:

> "This certified and authenticated copy would not be competent evidence for any purpose unless and until it was shown that the laws of New York required it to be on file, or of record, in an insurance department of that state. The full faith and credit clause of the Constitution of the United States and the statutes of our state on this subject do not become operative until it is shown that there is some official duty imposed by the law of the foreign state."

But we have here involved not the question of the admissibility of a document kept in a public office in a foreign country, but the question of the admissibility of a report made by an official of a foreign country from examination of records, without any proof whatever concerning the laws thereof, or even any showing that the official that made the report was the custodian of such record or had any duty concerning the same.

In the case of *Cleveland, etc., R. Co.* v. *Woodbury Glass Co.* (1923), 80 Ind. App. 298, 318, 120 N. E. 426, a witness was permitted to testify concerning the net profits of one of the parties from the operation of its plant for a particular time. The witness based his evidence of the net profits during such period from an examination of the books of the party. This court points out that,

> "It is well settled that where books, records, and papers, which might properly be used in evidence,

are numerous or voluminous, it is competent for any qualified person who has examined them, to testify as to the result of such examination with regard to the subject under investigation. (Cases cited.) This rule is especially applicable where the ultimate fact to be ascertained must be the result of a calculation, involving many transactions and numerous amounts. In such a case any other method would cause great loss of time, and tend to confuse rather than enlighten the jury."

But where a witness testifies in such a case concerning his investigation of private records and the conclusions he obtained therefrom, he is subject to cross-examination by the party adversely affected by such testimony. Our attention has not been called to any precedent where a written report of a witness of the results of his examinations of records, public or private, domestic or foreign, which have been prepared for use in evidence in pending litigation, has been declared admissible in evidence in the absence of a statute particularly authorizing its admission.

While we are not advised of any precedent in this State involving the admission into evidence of documents prepared as was Exhibit K, the matter has been before the courts in everal other jurisdictions.

In the case of *In re Johnson's Estate,* Surrogate's Court, New York County (1939), 16 N. Y. S. (2d) 855, 857, in a proceeding for distribution of the portion of a decedent's estate, certain petitioners sought to introduce an exhibit to show their relationship to the deceased and their right to inherit his property. This exhibit was a certificate executed by the rector of a parish in a particular province of Sweden, who purported to be the legal custodian of all the ministerial records of such parish, and who purported to be certifying in conformity with statute. His particular certificate stated facts obtained from such records and other

documents produced before him concerning the pedigree of the particular petitioners. His certificate was duly authenticated and was not defective because it lacked identification as provided for by the New York law. In discussing its admissibility the court said:

"It is fatally defective because it is not a *certified copy*. Here again the court meets with a fusion of the act of certifying with the thing to be certified. The outcome of this fusion is, in practical effect, an attempt by an administrative officer of a foreign country to hear and to determine the very issues which, by the pending proceeding, have been submitted to this court. On its face the certificate here shows that the certifying officer did not content himself even ostensibly, with making up a statement strictly limited to original registry sources. Instead he relied he says in part 'on other documents' the nature of which is nowhere revealed. Not being a *copy* of a public foreign *record* the paper is inadmissible."

In the case of in *Derinza's Case* (1918), 229 Mass. 435, 443, 118 N. E. 942, 946, papers purporting to be copies of certificate of the marriage of the deceased and of the birth of his several children were received in evidence by an arbitration committee. They bore at the heading and at the end the name of an Italian town, and purported to have been authenticated by one who signed his own name followed by the words "Civil Officer," and there was a seal attached. The court in discussing the admissibility of such copies said:

"These copies of certificates were not competent evidence. There was no proof of the law of Italy requiring or permitting the keeping of such records by the town, the deposition of the custodian of the records covering material points was not proffered, nor was there any evidence respecting their character, the circumstances under which the records were kept, or the source from which the certificates came. No one testified that they were copies of an

official original. There was no authentication of them as genuine by a consular officer of the United States. There was absolutely nothing beyond the bare production of the copies of the certificates. In the absence of a statute making such certificates admissible by themselves, or something to show that they were entitled to a degree of credence, they were not competent. (Cases cited.)

"It is not necessary to decide just what formalities would have been required to render them competent evidence, as the present record is entirely bald of anything in that direction."

In the case of *In re Braun's Estate, State Land Board of Oregon* v. *Portland Trust & Savings Bank* (1939), 161 Oregon 503, 90 P. (2d) 484, 510, the court had involved the sufficiency of documentary evidence received from a foreign country to establish heirship. Fritz Braun had died intestate an inmate of the state hospital in Salem, Oregon. The Portland Trust & Savings Bank, which had been acting as his guardian, acted as administrator of his estate, and in the making of its final report it set forth that the decedent died leaving as his sole heirs at law Sophie Braun and Anna Barbara Bingemer, nee Braun, sisters, and Karl August and Ernst Braun, brothers, who resided in Germany. With such final report was filed certain correspondence between the superintendent of the insane hospital, where decedent died, with claimed relatives, with answers thereto setting forth facts about their relationship to decedent. The German consul in Portland communicated with supposed heirs in Germany and procured from August Braun a declaration and proof of heirship. This document appeared to have been properly sworn to before a judge of a court of record of Germany and was duly authenticated by the certificate of a judge of a higher court, and was further given authenticity by the certificate of the United

States Consul at Frankfort, and therein August Braun set forth the names of the surviving heirs of the decedent. The German consul at Portland also procured a certified copy of the marriage record of Anna Bingemer to Carl Bingemer, and another statement by August Braun in the form of an affidavit sworn to before the United States consul at Frankfort, setting forth the names of the living heirs of the decedent. He also procured a photostatic copy of a part of a record which was designated as an "extract from the family register at Pforzheim, No. 1011." This was not certified but it purported to contain biographical data concerning the family of Jakob Frederich Braun, including the date of his marriage, the birth of eight children to that marriage, one of whom was named Jakob Frederich. All these instruments were filed with or attached to the report of the administrator, and the question before the Supreme Court of Oregon was the sufficiency thereof to establish heirship as against an objection filed by the state to the final account setting forth that the decedent died intestate and without heirs, and that the proceeds of his estate escheated to the state of Oregon. The court, in holding the evidence insufficient, points out that while affidavits are admissible under Oregon law for certain definite purposes, there is no statute in Oregon which permits the use of affidavits to establish heirship. The court said:

"The documentary evidence admitted was relevant and competent to show that the administrator was justified, at the time it filed its final account, in believing that the decedent did not die without heirs. Those documents, however, were not competent evidence in a contest as to heirship to establish that the members of the Braun family in Germany, referred to therein, were the brothers and sisters of the deceased.

"The letter from the acting superintendent of the Oregon state hospital does not purport to be, and is not, a certified copy of any record on file in that institution, and therefore it has no evidentiary value to determine the one question here involved, that is, whether the decedent died without heirs. The correspondence between the trust officer of the bank and certain individuals in Germany likewise is incompetent to establish heirship. The sworn statement of August Braun was made *ex parte* and without opportunity to the state land board to cross-examine the affiant."

Professor Wigmore in his work on Evidence points out that the rule of the common law denying to the custodian of a public record any authority to certify to anything other than the entire and literal terms of the original document was inconsistent with good sense and practical needs. He says:

"In a vast number of cases, the tenor of a record or an entry is quickly ascertainable, is open to no difference of opinion, and can be summarily stated without a literal transcription; the possibilities of harm are further diminished by the publicity of the record and its easy access for the detection of error. Accordingly, by statute, the use of certificates of the *effect or substance* of a document has been widely sanctioned." Wigmore on Evidence (3rd Ed.), Vol. 5, § 1678, pp. 748-750.

We know of no statute in this State authorizing officials of foreign countries to examine records and certify as to their contents. While the precedents heretofore set forth and the established rules may seem harsh, in that they place undue burdens and extraordinary expense, upon litigants in making proof of the simple fact of heirship, the remedy is with the Legislature. It is doubtless true that by proper legislation much expense, trouble, delay, and uncertainty incident to proof of the contents of documents of this

and of other states, and of foreign countries, could be eliminated.

We find no justification whatever in our law for the introduction of Exhibit K, and since it was the only offered proof to establish heirship of appellees, the evidence is insufficient to sustain the decision of the court.

The first three grounds stated in appellant's motion for a new trial do not require extended consideration. Appellant also assigns them separately as errors for reversal for the purpose, we presume, of covering the contingency that they are not proper grounds in its motion for a new trial. It is therefore not necessary for us to determine whether these claimed errors should be assigned separately or as grounds in the motion for a new trial.

It was clearly within the discretion of the trial court to require W. B. Waddell to make proof of his authority to act as an attorney for appellees. He did file an affidavit, or rather a verified pleading, setting forth facts showing his authority. The court heard evidence, which is not in the record, concerning this authority, and appellant's claim that the trial court abused its discretion is not sustained.

Appellant has shown no error, harmful to it, resulting from the refusal of the trial court to require the appellees to file a cost bond as nonresidents. The State of Indiana is not liable for costs in a suit where it is a party in the absence of statute. The trial court did not rule upon such motion until it rendered its judgment for appellees; and, then, evidently upon the theory that the fund in the possession of the clerk of the court would be adequate to take care of all court costs arising upon the *ex parte* petition of appellees, it overruled such motion.

Under the provisions of § 2-4708, Burns' 1933, "Plaintiffs who are not residents of this state, before commencing any action, shall file in the office of the clerk a written undertaking, payable to the defendant, . . ." By the provisions of § 49-1903, Burns' 1933, the Attorney General of the State is authorized to prosecute civil actions without filing bond for costs or damage. By the provisions of § 49-1406, Burns' 1933, "It shall be the duty of the clerk, at the time of filing any complaint *or any other pleading in his office on which process is demanded,* to ascertain if any of the parties demanding such process is a resident of the state of Indiana, and if not a resident of the state of Indiana, he shall not file such pleading or issue process thereon until an undertaking for costs, to the approval of such clerk, shall have been filed, and the clerk failing to ascertain such residence or failing to require such undertaking shall be liable for the amount of all officers' costs incurred in such proceeding, . . ." (Our italics.)

We find nothing in the record to justify appellant's claim that the trial court, by redocketing the cause in which the estate of Christian Schneider (Snyder) was administered, set aside the judgment of final settlement. The record simply shows that the cause was redocketed on August 4, 1939, when appellees' petition to establish heirship was first filed. It shows nothing about the vacation or setting aside of the order of final settlement. It was proper for the trial court to redocket the cause so that additional proceedings for distribution of assets might be had, and such in no way affected or set aside the order of final settlement.

Because of error of the trial court in permitting the

admission into evidence of appellees' Exhibit K, over objection of the appellant, and because the decision of the trial court is not sustained by sufficient evidence, the judgment is reversed and the cause is remanded with direction to sustain appellant's motion for a new trial.

NOTE.—Reported in 40 N. E. (2d) 976.