542 N.E.2d 1009 (1989)
In re the PATERNITY OF Joshua Thomas TOMPKINS.
Kevin E. Brown, Appellant (Respondent below),
v.
William N. Mills, As Guardian Ad Litem for Joshua Thomas (Tompkins) Brown, Appellee (Petitioner below).
No. 35A04-8810-CV-360.
Court of Appeals of Indiana, Fourth District.
August 17, 1989.
*1011 Robert S. Garrett, Palmer, Bowers & Brewer, Huntington, for appellant.
Stephen J. Michael, Matheny, Michael, Hahn & Bailey, Huntington, and Linda J. Peters, F. Walter Riebenack, Sowers, Larson, Riebenack & Connolly, Fort Wayne, for appellee.
CHEZEM, Presiding Judge.

Case Summary
Appellant, Brown, appeals the granting of Appellee's, Mills' (as Guardian ad litem for Joshua Thompkins), petition to set aside a determination of paternity in favor of Brown. We affirm.
Issues
I. Whether the trial court erroneously failed to rule upon Brown's motion to dismiss.
II. Whether the trial court erroneously admitted testimony of out of court declarations regarding the paternity of Joshua Thompkins.
III. Whether the trial court erred in admitting evidence of blood tests when the tests had been ordered in a companion proceeding, but not the instant proceeding.
IV. Whether the trial court erred in admitting into evidence a certified copy of the docket sheet in a companion case.
V. Whether the trial court erred in taking judicial notice of the court records of a companion case.
VI. Whether there was sufficient evidence to sustain the order granting Mill's petition.

Facts
This matter comes to this court for a second time. The first appeal was brought by Mills when the trial court granted Brown's motion for judgment on the pleadings. This court reversed the judgment of the trial court and remanded the case for further proceedings. The case was reported as In Re Paternity of Tompkins (1988), Ind. App., 518 N.E.2d 500 (hereinafter referred to as "Tompkins 1"). The facts were set forth in that opinion and read in part as follows:

*1012 On June 15, 1980, Joshua Thomas Tompkins was born to Debra Tompkins Booher. At the time Joshua was born, Debra was married to, but separated from, Michael Tompkins, her second husband. On October 1, 1980, the Allen Circuit Court dissolved Debra and Michael's marriage. Apparently, Debra and Joshua resided with Debra's first husband, Kevin Brown, for approximately a year. In August of 1981, Debra and Joshua moved in and lived with Gary Booher. On December 12, 1981, Debra married Gary. Subsequently, Debra and Kevin filed a joint petition to establish paternity of Joshua, and on February 5, 1982, a judgment was entered declaring Kevin as the father of Joshua.
Debra remained married to Gary and retained custody of Joshua. On August 28, 1984, a daughter, Jasmine Lee, was born to Debra and Gary. Gary and Debra raised and provided support for both Joshua and Jasmine. On September 2, 1985, Debra died from an aneurysm in her brain. Gary filed a petition to establish a guardian for Joshua. The Huntington Circuit Court appointed William N. Mills as guardian for Joshua. Thereafter, Mills, upon obtaining evidence that Kevin was not Joshua's biological father, filed suit to set aside the paternity judgment on the basis of fraud. Mills also filed a motion to consolidate the guardianship and paternity suits. Kevin challenged the suit and motion to consolidate and filed a motion for judgment on the pleadings based upon application of Rundel v. Shady (1986), Ind. App., 492 N.E.2d 694. The trial court denied Mills' motion to consolidate, granted Brown's motion for judgment on the pleadings, and dismissed Mills' complaint ...
Id. at 502.
This court affirmed the action of the trial court in its denial of the motion to consolidate and reversed as to the granting of judgment on the pleadings. Tompkins 1, supra. Prior to the evidentiary hearing on Mills' petition, Brown filed a motion to dismiss; Brown set forth two (2) grounds for dismissal in his motion: (1) failure to state a claim upon which relief could be granted; and (2) laches. The trial court took the motion under advisement, but never ruled upon it.
The trial court conducted an evidentiary hearing on Mill's petition. Afterward, the trial court ordered that the paternity determination in favor of Brown be set aside.

Discussion and Decision

I
First, Brown argues the trial court erroneously failed to rule upon his prehearing motion to dismiss. Error may not be predicated on the failure of a trial court to rule on a motion. Watkins v. State (1983), Ind., 446 N.E.2d 949. Accordingly, the issue has been waived.

II
Next, Brown argues that the testimony of Katie Stuart should have been excluded as hearsay. Mills counters that the testimony was admissible under the pedigree exception of the hearsay rule. Brown argues that the pedigree exception did not apply here since Mills did not establish that the witness was intimately associated with the family and cites in support the decision of the First District in Emberry Community Church v. Bloomington District Missionary and Church Extension Society, Inc. (1985), Ind. App., 482 N.E.2d 288.
The pedigree exception permits admission of a declarant's out of court declarations regarding parentage or ancestory. For the statement to be admissible under the pedigree exception, the declarant must be deceased and the declarant must have been related by blood or by marriage to the family of the person in question. State v. Schaller (1942), 111 Ind. App. 128, 40 N.E.2d 976. The relationship of the witness to the declarant is irrelevant so long as the testimony is of the statements of the declarant, ante litem motam, and not what friends and neighbors thought. See Schaller, supra; See also 12 I.L.E. § 119, p. 554.
Brown's reliance on Emberry is misplaced. In Emberry, the First District did not place foundational requirements *1013 upon the competency of the witness. Rather, the holding on the evidentiary issue was twofold. First, the witness, who testified about facts of family history which related to him, was not precluded from testifying, even though his knowledge was not first hand, since his knowledge was derived from intimate acquaintance with the family; such testimony was held not to be hearsay because the testimony more closely resembled personal knowledge than hearsay. Emberry at 291. Second, the court held that even if the testimony was hearsay, the disputed testimony was also admissible under the pedigree exception to the hearsay rule, even though the witness had relied in part upon a geneologist's report. The report did not render the testimony inadmissible since the report would itself have been admissible as an exception to the hearsay rule. Emberry at 292 (citing Uniform Rules of Evidence, § 804(4)(i), 13 U.L.A. 340; Federal Rules of Evidence 803(13); McCormick on Evidence § 322, at 746 (2d ed.)).
Emberry has no application to this case. Here, the witness testified concerning certain declarations made by Joshua's mother which concerned Joshua's true parentage. Joshua's mother is deceased. Thus, the testimony was admissible under the pedigree exception to the hearsay rule.
Brown has not demonstrated any valid reason why the testimony should have been excluded. Accordingly, the admission of the testimony was proper.

III
Third, Brown argues that since the blood tests were ordered in the guardianship action, and not in this action, the blood tests should not be admitted into evidence. Brown does not challenge the foundation which was laid for the admission of the tests or the testimony of the expert; his challenge is based solely upon the fact the tests were not ordered in this cause.
Brown has failed to support his proposition with even one citation of authority and has failed to make cogent argument. Accordingly, his argument is waived from further consideration. Whisman v. Fawcett (1984), Ind., 470 N.E.2d 73, 80; Baesler's Super-Valu v. Indiana Commissioner of Labor, (1986), Ind. App., 500 N.E.2d 243, 249.

IV
Fourth, Brown argues that a certified copy of the docket sheet of the guardianship action was improperly admitted into evidence; Brown claims the document was irrelevant to this action. Mills counters that, among other things, the docket sheet was relevant to show the origin of the blood testing order and that Brown was represented by counsel at the time the order was issued.
The trial court is vested with wide latitude and sound judicial discretion in accepting or rejecting evidence on the basis of relevance. Admission of such evidence will be sustained on appeal so long as the evidence has a tendency to prove or disprove a material fact, even though its tendency to prove may be slight. We will reverse in such a case only where the admission was a clear abuse of discretion. Patterson v. State (1975), 263 Ind. 55, 324 N.E.2d 482; Spears v. Aylor (1974), 162 Ind. App. 340, 319 N.E.2d 639.
Here, the trial court did not abuse its discretion. The docket sheet was relevant to show why the blood tests were administered. Also, Brown does not demonstrate how he was prejudiced by the admission of the docket sheet. Therefore, we find no merit in Brown's argument.

V
Fifth, Brown argues that the order setting aside the paternity determination was not based upon sufficient evidence. When a party seeks to reverse an adverse judgment on the ground that the evidence is insufficient to support the judgment, we will not reweigh the evidence. Rather, we will look to the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. If there was substantial evidence of probative value, the judgment of the trial court will not be overturned. Rubsam v. Estate of Pressler *1014 (1989), Ind. App., 537 N.E.2d 520; Cole Real Estate Corp. v. Peoples Bank & Trust (1974), 160 Ind. App. 88, 310 N.E.2d 275.
Brown sets forth four (4) reasons why there was insufficient evidence to prove an extrinsic fraud; they are as follows:
1) Mills did not prove that the alleged fraud was extrinsic or collateral to the initial paternity determination;
2) Mills failed to prove that the alleged fraud prevented any party to the action from having their interests represented or were prevented from "having their day in court";
3) Mills failed to establish that either Brown or the mother knew Brown was not Joshua's father;
4) Mills failed to establish that the parties obtained the paternity order through fraud;
In Tompkins 1, supra., this court established that the allegations of Mills motion to set aside the paternity determination were sufficient to set forth a claim for relief under Indiana Rules of Procedure Rule 60(B)(8); specifically, the motion successfully alleged that the paternity judgment had been procured by an extrinsic fraud or a fraud upon the court. Since Brown did not successfully appeal that decision, it has become the law of the case. Tokash v. Tokash (1984), Ind. App., 458 N.E.2d 270. Thus, if there is evidence of the elements averred in the motion, the judgment will be sufficiently based as a matter of law.
In Tompkins 1, supra., we held that Mills' claim of extrinsic fraud was sufficient if Mills proved:
1) Brown and Debra knew that Brown was not the biological father prior to the filing of the joint petition;
2) The petition was filed in spite of this knowledge; and
3) Joshua's interests were not represented, and thus, he was prevented from presenting his case.
See Tompkins 1, at 506.
The evidence most favorable to the order demonstrates that both Brown and Debra knew Brown was not the father before the filing of the petition to establish paternity. Furthermore, the evidence demonstrates that although the joint petition was filed by a part-time deputy prosecutor, the petition was filed by the attorney in his private, not public, capacity. Also, Brown was billed for the attorney's work. The attorney testified that paternity clients of the prosecutor's office were not billed.
Therefore, there is no evidence to suggest that Joshua's interests were represented in the initial paternity action and, as a result, Joshua was denied his day in court. Joshua was entitled to an accurate determination of his heritage. The filing of the joint petition and the subsequent proceedings thereon fraudulently violated Joshua's right to an accurate determination.
Since we affirm the trial court's order on the theory of extrinsic fraud, we decline to determine whether the order was sustainable on the "fraud on the court" theory.

VI
Finally, Brown argues the trial court erroneously granted Mills motion to take judicial notice of the records of the guardianship proceeding. We agree. A trial court may take judicial notice of the records of the case over which he is presiding, but he may not take notice of the records of another case, even if it involves the same parties with nearly identical issues. Smith v. State (1983), Ind., 443 N.E.2d 1187.
However, Brown has not demonstrated how he was prejudiced by the judicial notice of the records. As shown above, there was ample evidence to support the order of the trial court. Therefore, the error was harmless. Beta Alpha Shelter of Delta Tau Delta v. Strain (1983), Ind. App., 446 N.E.2d 626.
For all of the above reasons, the judgment of the trial court is affirmed.
MILLER and HOFFMAN, JJ., concur.