**In re the Marriage of M.E.,**

**and**

**D.E.**

No. 61A04–9304–CV–153.

Court of Appeals of Indiana, Fourth District.

Oct. 28, 1993.

James O. Hanner, Hanner, Hanner and Hanner, Rockville, for appellant.

Bruce V. Stengel, Beardsley and Stengel, Clinton, for appellee.

CONOVER, Judge.

Petitioners–Appellants M.E. and D.E. appeal the trial court's denial of their joint petition to set aside finding of paternity.

We reverse.

The sole issue M.E. and D.E. present for our review is whether the trial court erred in denying their joint petition to set aside the finding of paternity of T.E., as stated in their 1989 dissolution decree, following

medical proof D.E. is not T.E.'s biological father.

M.E. and D.E. married in September, 1984 and divorced in November, 1989. During their marriage, they separated several times and were separated at the time of T.E.'s conception in September, 1987. They reconciled and lived together again prior to their divorce. However, M.E. told D.E. the child was his to avoid hurting D.E.'s feelings and to avoid "destroy[ing] the real father." (R. 56). D.E. did not contest paternity at the time of the dissolution and now states at the time he learned M.E.'s pregnancy, he did not believe it was his child but, "had no proof or no way of proving that it wasn't mine." (R. 71). D.E. was not represented by counsel during the divorce.

The record before us is sparse regarding the divorce proceedings, containing only the initial petitions and the order book entry of the final hearing which provides "custody of the three minor children born to the marriage shall be placed with the mother with rights of reasonable visitation at reasonable times and places in the father." The court also ordered D.E. to pay child support and reasonable uninsured medical, dental and optical expenses. (R. 11).

After the divorce, D.E. paid child support and exercised his visitation rights, however he visited more with the older children than with T.E. (R. 65). M.E. later decided it would be unfair to T.E. to grow up without knowing the identity of his biological father and, as a result, sometime prior to September 1991, M.E. told D.E. she felt he might not be T.E.'s father. In September of 1991, D.E., M.E., and T.E. underwent a paternity evaluation which concluded, "The genetic data listed above indicates that [D.E.] CAN BE EXCLUDED as a possible father of [T.E.]." (R. 61).

On September 22, 1992, the M.E. and D.E. filed their joint petition to modify and to set aside finding of paternity, with attached paternity evaluation. (R. 13–14). T.E., through his court-appointed guardian ad litem, opposed the petition.

Following a hearing, the trial court denied the joint petition and stated in its order:

... The earlier ruling of this court finding [D.E.] to be the father of [T.E.] and requiring [D.E.] to support [T.E.] remains in full force and effect.

(R. 31).

M.E. and D.E. contend a paternity action may not be raised against T.E.'s biological father given the paternity finding of the dissolution court. M.E. and D.E. maintain the trial court erred and abused its discretion in denying their petition in light of conclusive evidence D.E. is not T.E.'s biological father. They additionally maintain the dissolution finding regarding paternity was procured through extrinsic fraud or fraud on the court. Therefore, they contend the trial court's judgment must be reversed.

In opposition, T.E. essentially makes a public policy argument and maintains, "It is in [T.E.]'s best interest to have someone certain to be responsible for the support and medical bills of [T.E.] than the mere possibility of finding of biological father." (Brief of Appellee at 7). In addition, T.E. intimates the joint motion to set aside judgment was not timely. M.E. and D.E. contend one year from the date of conclusive proof is not unreasonable given the "complex legal and psychological intricacies of this case." (Brief of Appellant at 11).

■▬ We first note a dissolution decree finding one a child of the marriage, in and of itself, is not *res judicata* on the issue of paternity. *In re Paternity of S.R.I.* (1992), Ind., 602 N.E.2d 1014, 1016. Such a finding "amounts to no more than a finding that he was born to the wife during the marriage...." *Id.,* at 1017, *quoting A.B. v. C.D.* (1971), 150 Ind.App. 535, 277 N.E.2d 599, 616. Even if a judgment has been rendered against the mother in a previous paternity action in which the child was not a party, *res judicata* does not bar a paternity action *by the child. Kieler v. C.A.T. and C.S.T. by Trammel* (1993), Ind.App., 616 N.E.2d 34. Therefore, mindful of the statutory requirements for paternity ac-

tions, an action can be pursued against T.E.'s biological father notwithstanding the dissolution decree.

Be that as it may, a child born during a marriage is presumed legitimate. *Cooper v. Cooper* (1993), Ind.App., 608 N.E.2d 1386, 1387. In a divorce proceeding, this presumption and silence will establish paternity. *Id.* However, justice disfavors a support order against a husband who is not the child's biological father. *Fairrow v. Fairrow* (1990), Ind., 559 N.E.2d 597, 600. If the clear, direct and convincing evidence is present, entering a support order against a husband who is not the child's father is generally improper. *Id.* One who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court. *Id.*

In *Fairrow, supra,* at the time of dissolution, Mr. Fairrow did not contest paternity of a child born during the marriage. Eleven years later, medical testing, gained independent of court action and pursuant to a doctor's suggestion following the child's sickle-cell anemia diagnosis, concluded Mr. Fairrow was not the child's father. On transfer, our supreme court found Mr. Fairrow should be relieved from the divorce decree's paternity finding because he "... affirmatively demonstrated that the relief he sought was necessary and just." *Id.,* at 599.

Here, the record reveals D.E. had his suspicions originally, but M.E. told him the child was his. Further, in the joint motion to set aside judgment, under penalty of perjury, M.E. indicated she misled the court as to the paternity of T.E. Blood tests, which concluded D.E. was not T.E.'s father, were obtained pursuant to M.E.'s request. The court admitted the paternity evaluation into evidence over the objection of T.E.'s guardian ad litem, ruling it would be admitted subject to further checking its admissibility.[1] Further, D.E. testified he understood the amount of his support obli-

gation would not change even if T.E. was determined not to be his child. (R. 73). Based upon instruction of *Fairrow, supra,* the trial court erred in denying the joint motion to set aside.

We next turn to the issue of fraud. Opening of a paternity case sought by a party who has previously acknowledged himself to be the father should only be allowed in extreme and rare instances. *Matter of Paternity of R.C.* (1992), Ind. App., 587 N.E.2d 153, 157. Under Indiana's rules, a judgment may be attacked directly on the basis of fraud in three different ways. *In re Paternity of Tompkins* (1988), Ind.App., 518 N.E.2d 500, 504, *appeal after remand* (1989), Ind.App., 542 N.E.2d 1009. Those methods are: (1) pursuant to Ind. Trial Rule 60(B)(3) for extrinsic or intrinsic fraud; (2) an independent action for extrinsic fraud; or (3) an independent action for fraud on the court. We will examine each method in turn.

The first method of attack is pursuant to T.R. 60(B)(3). A judgment may be attacked through fraud, either extrinsic or intrinsic. *Paternity of R.C., supra,* at 156. However, pursuant to T.R. 60(B)(3), the attack must be made within one (1) year from the date of judgment. T.R. 60(B). Here, the attack was not brought within the one year period and therefore, T.R. 60(B)(3) cannot sustain the appellants' request.

The second and third methods of attack, independent actions alleging extrinsic fraud or fraud on the court, are encompassed within the savings clause of T.R. 60(B) which provides:

... does not limit the power of a court to entertain an independent action to to relieve a party from judgment order or proceeding or for fraud on the court.

The court's power to entertain and fashion relief is based on the court's equitable jurisdiction and the court's equitable powers provide flexibility to grant relief. *Paternity of R.C., supra,* at 156. A review of the grant or denial of a T.R. 60(B) motion is

---

1. The record does not indicate any follow up regarding the admissibility of the evaluation

and neither party presents an argument at this level as to its admissibility.

limited to whether the trial court abused its discretion. *Freels v. Winston* (1991), Ind. App., 579 N.E.2d 132, 135, *reh. denied, trans. denied.*

In deciding whether to grant relief pursuant to either of the above mentioned independent actions based on fraud, the court should determine if the aggrieved litigant has established the following elements:

1. a judgment which ought not, in equity and good conscience, to be enforced;
2. a good defense to the alleged cause of action on which the judgment is founded;
3. fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense;
4. the absence of fault or negligence on the part of the defendant; and
5. the absence of any adequate remedy at law.

*Paternity of Tompkins, supra,* at 504. (Citation omitted).

An independent action based on fraud is governed by the extrinsic-intrinsic fraud distinction. *Paternity of R.C., supra,* at 156. Only extrinsic fraud will support setting a judgment aside. Fraud has been defined as extrinsic if the fraudulent matter prevents a trial of the issue in the case or improperly procures the court's jurisdiction. *Id.* Extrinsic fraud has been found where a party has been prevented from exhibiting his case fully by fraud or deception practiced on him by his opponent. An action for relief is not barred by the one year period of limitations but is subject to the doctrine of laches. *Paternity of Tompkins, supra,* at 505.

Here, the joint motion alleges facts which support an independent action for extrinsic fraud. The requirements for relief have been met. M.E. and D.E. filed their joint petition to modify and to set aside finding of paternity alleging in pertinent part:

3. That said finding of paternity should be set aside for the reason that Petitioner in said cause of action [M.E.] [dissolution] as a result of her state of mind falsely represented to the Court that [D.E.] was the father of said child.
4. That the parties hereto have submitted to an HLA tissue test, the results of which are attached hereto and marked as Exhibit A which shows that there is no possibility that the respondent [D.E.] is the natural father of said child [T.E.].

(R. 13).

The allegations assert more than perjury. The facts suggest M.E. knew D.E. was not the biological father of T.E., yet she told D.E. he was. D.E. did not contest this at the dissolution hearing. The fraudulent matter prevented a trial of the issue of paternity in the case. Under our rules for challenges based on extrinsic fraud, the trial court erred in denial the appellants' joint motion.

The third method of relief, also an independent action, may be brought based on the doctrine of fraud on the court. *Paternity of Tompkins, supra,* at 506. This type of fraud is also referred to in T.R. 60(B)'s savings clause. *Id.* However, unlike a T.R. 60(B)(8) action based on extrinsic fraud, a T.R. 60(B) action for fraud on the court is not subject to the doctrine of laches and may be raised at any time. *Id.* Courts have narrowly applied the doctrine of fraud on the court; it is limited to the most egregious of circumstances involving the courts. *Id.,* at 507. However, as we stated in *Paternity of Tompkins, supra,* at 507:

... if a party establishes that an unconscionable plan or scheme was used to improperly influence the court's decision, and that such acts prevented the losing party from fully and fairly presenting his case or defense, then "fraud on the court exists."

(Citation omitted).

In *Paternity of Tompkins, supra,* following the death of child's mother, the child's guardian filed a motion to set aside a previous paternity judgment on the basis of fraud. The trial court granted the previously determined father's motion for judgment on the pleadings, and dismissed the guardian's motion to set aside the previous

paternity judgment. On appeal, due to extrinsic fraud and fraud on the court, we reversed and determined the trial court erred in granting judgment on the pleadings. The facts supported an action for extrinsic fraud based on the following: (1) the mother and named father's acts in naming him as the child's father with knowledge he was not; (2) the biological father's interests might have been fraudulently affected; (3) the prosecutor, although statutorily bound to represent the child, apparently represented the named father's interests; and (4) the child was prevented from presenting his case, asserting his interests and determining his biological father. Further, we determined the facts supported an action for fraud on the court because the perpetrated scheme misled the court as to the child's paternity, prevented the child from having his day in court, and defrauded the court with the fabricated paternity petition.

Likewise, in *Paternity of R.C., supra,* we reversed the trial court's judgment which dismissed, without a hearing, an action based on fraud and newly discovered evidence. In *Paternity of R.C., supra,* the trial court found a man who voluntarily admitted paternity to be the child's father and ordered him to pay support. Approximately three years following the court's finding, the man filed a petition for relief based on fraud. The child's mother filed a supporting affidavit stating she did not reveal the man was not the child's father at the time of the paternity action because she was having a relationship with him and the biological father was unemployed and unable to provide support. The man did not contest paternity because of the emotional factors involved and lack of funds to contest the action. The trial court dismissed the petition without a hearing. On appeal we reversed and remanded the matter, finding the trial court was defrauded by the use of the fabricated petition for pater-

nity, thereby depriving the man a trial on the issue of paternity. The alleged facts revealed an action for fraud on the court. The action was not precluded by the three year time period.

The alleged facts and underlying implications, as in *Paternity of R.C., supra,* and *Paternity of Tompkins, supra,* support a fraud on the court action. According to the record, M.E. misled the court regarding the paternity of her son. Her action was planned to avoid hurting D.E.'s feelings and to avoid "destroy[ing] the real father." (R. 56). M.E.'s plan worked when the dissolution court found T.E. to be a child of the marriage and ordered D.E. to pay support. M.E. later informed D.E. T.E. was not his child and all three submitted to the paternity evaluation. Although D.E. had his suspicions, and could have contested paternity at the time of dissolution, *Cooper, supra,* his failure to do so is not so agregious to preclude a remedy.

Our supreme court, as well as this court, has previously stated the importance of preserving judgments. The opening of paternity judgments should be rare and only available in such circumstances as justice, which disfavors a support order against a husband not the child's father, demands. See *Fairrow, supra,* at 600, *Paternity of R.C., supra,* at 157. However, when such a case is demonstrated, the judgment must be set aside. The trial court erred in denying the appellants joint motion to set aside finding of paternity.

Reversed.

CHEZEM and ROBERTSON, JJ., concur.