Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not
be regarded as precedent or cited
before any court except for the purpose
of establishing the defense of res
judicata, collateral estoppel, or the law
of the case.



ATTORNEYS FOR APPELLANT:

**BRYAN LEE CIYOU**
**CASSANDRA MELLADY**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MARY BETH MOCK**
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF V.A., a minor, | ) | |
| | ) | |
| R.A., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 39A01-1209-JP-413 |
| | ) | |
| B.Y., | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause No. 39C01-1108-JP-28

**May 10, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

R.A. ("Father") appeals the trial court's order addressing custody, parenting time, child support, and personal property issues. We affirm and remand.

**Issues**

Father raises five issues, which we consolidate and restate as:

I.  whether the evidence supports the trial court's findings;

II. whether the trial court's failure to rule on the issues of legal custody and contempt requires remand;

III. whether the trial court's award of child support was proper; and

IV. whether the trial court properly addressed issues related to the return of personal property.

**Facts**

B.Y. ("Mother") and Father met in 2002. When Mother became pregnant, she and her two other children, J.A. and K.M., moved in with Father in Madison. V.A. was born on June 30, 2003. Mother and the three children lived with Father until June 26, 2011, when Mother moved to Columbus with the children. On October 8, 2011, Mother married another man and had a child with him on April 12, 2012.

On August 3, 2011, Father filed a petition to establish paternity, custody, parenting time, and child support. On September 21, 2011, Mother filed a motion requesting the return of certain personal property she had left at Father's house. On March 7, 2012, Father filed a contempt petition alleging that Mother had not complied with a court order allowing him to have bi-weekly phone calls with V.A. On March 8, 2012, the trial court

approved the parties' agreement requiring Father to pay $40.00 per week in child support until the matter was resolved.

On May 21, 2012, and June 19, 2012, a hearing was held on the parties' motions. On July 10, 2012, the trial court conducted an in camera interview with V.A. On August 24, 2012, the trial court issued an order, which provided in part:

> [V.A.'s] mother has been his primary caregiver since he was born. [Mother] did not work when the parents were together. During a good portion of that time [Father] was earning his undergraduate degree at the Bloomington Campus of Indiana University, and was staying there much of the time, splitting his time between Monroe County and Jefferson County.
>
> [Mother] has four children, the oldest being a son, [J.A.], who is thirteen. She also has a nine year old daughter, [K.M.], age 10, who is seriously handicapped. [K.M.] is suffering from Shaken Infant Syndrome as a result of abuse suffered when she was a few months old at the hands of a boyfriend of her mother. In addition to [V.A.] [Mother] has a young daughter who is less than a year old. All of the children are close, and the boys help caring [sic] for both of the girls.
>
> There has been domestic violence between the parties that has been witnessed by the boys. This has been escalating over the past few years. [Father] has also used physical punishment on the boys that caused [V.A.] to be fearful of his father. That fear has diminished considerably since the parties have separated and gradually increased parenting time has been put in place.
>
> The Court finds it to be in [V.A.'s] best interest to be in the custody of his mother, with his father exercising parenting time pursuant to the Indiana Parenting Time Guidelines with a few exceptions. They are:
>
> > 1. Summer parenting time visits between [V.A.] and his father shall never exceed more than one two week

3

period in the summer without a break of at least two weeks with his mother.

* * * * *

On the issue of support, the Court finds that [Father] is underemployed. His support shall be raised from $40 per week to $60 per week beginning as of Friday July 20, 2012. . . .

* * * * *

All items listed on Exhibit 1 should be promptly returned to [Mother] except the Wii, with games, TV the Wii was played on, [V.A.'s] snake, and air hockey table.

App. pp. 18-21. Father now appeals.

## Analysis

### *I. Findings*

Father argues that the evidence does not support the trial court's findings regarding domestic violence, physical punishment, and summer parenting time. The trial court entered its findings and conclusions sua sponte. Under the circumstances, special findings entered by the trial court sua sponte control only as to the issues they cover. Harrison v. Thomas, 761 N.E.2d 816, 819 (Ind. 2002). "As to issues on which the trial court has not made findings, or on which the findings are inadequate, we treat the judgment as a general one and we examine the record and affirm the judgment if it can be sustained upon any legal theory the evidence supports." Id. As to the findings the trial court did make, we first must determine whether the evidence supports the findings and then whether those findings support the trial court's conclusions. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). Findings will only be set aside if they are clearly

4

erroneous, which occurs only when the record contains no facts to support them either directly or by inference or if the trial court applies the wrong legal standard to properly found facts. Id. "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made." Id.

We neither reweigh the evidence nor reassess witness credibility, and we view the evidence most favorably to the judgment. Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011). "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." Id. "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." Id.

### A. Domestic Violence

Father argues that the evidence does not support the trial court's finding that "[t]here has been domestic violence between the parties that has been witnessed by the boys. This has been escalating over the past few years." App. p. 19. Although Father correctly points out that Mother testified that Father began physically abusing her in January 2011, we are not convinced that the trial court's finding regarding escalating abuse over the past few years is reversible error. See Tr. p. 185. Mother testified that during the relationship she was not allowed to know about Father's income or the household finances and that she was not allowed to go to visit her sisters or parents.

5

Mother also testified that Father began verbally abusing her two years prior by telling her that everything she did was wrong and her fault. This evidence supports the trial court's finding that the abuse had been escalating over the past few years.

Father also suggests that Mother is not credible because she was pregnant and married to another man six weeks after leaving Father and asserts that Mother's claim of abuse was an attempt to keep Father away from V.A. The trial court was well aware of the time of Mother's marriage and of the parties' conflicting testimony regarding abuse and was in a better position to assess credibility. This argument is simply a request to reassess Mother's credibility, which we cannot do.

### B. Physical Punishment

Father also argues that the evidence does not support the trial court's conclusion that he had used physical punishment on the boys, causing V.A. to be fearful of Father. Father asserts that V.A.'s description of physical abuse was questioned by the guardian ad litem ("GAL") and V.A.'s school counselor. To the extent the GAL and counselor questioned the basis for V.A.'s initial fear of Father, this evidence was before the trial court for it to weigh accordingly. Moreover, Father admitted to spanking J.A., and Mother testified that Father physically punished both boys. Further, both the GAL and counselor testified regarding V.A.'s fear of Father and V.A.'s assertion that Father hit J.A., Mother, and him. The trial court's assessment of V.A.'s fear is supported by the evidence.

6

### C. Summer Parenting Time

Father also argues that the evidence does not support continuing the trial court's limitation on summer parenting time past the summer of 2012. The GAL testified that she was concerned about extended visitation beyond a week or ten days with Father that summer because V.A. was used to being with his siblings and his family unit. The GAL suggested that they be "a little creative with this summer," and she agreed that they ease him into the parenting time guidelines at least for this summer. Tr. p. 303. She elaborated that V.A. "has a very, very tight bond with his siblings, one that would be very detrimental if he didn't have regular contact . . . ." Id. at 304. She later testified that she did not know how future summer should be treated because it was hard to predict what V.A. would be comfortable with at that point in time. The GAL's testimony about the difficulty of predicting the appropriateness of extended summer visitation in the future and the evidence of V.A.'s close bond with his siblings support the trial court's decision to modify the way summer parenting time is exercised.[1]

### II. Failure to Rule

Father argues that the trial court erroneously failed to rule on the issue of legal custody and on Father's contempt petition. Mother responds by arguing that Father waived any alleged error by not following the procedure set forth in Indiana Trial Rule 53.1(E) and that a trial court's failure to rule on a motion cannot be the basis for error. We are not persuaded by Mother's argument.

---

[1] Father makes no argument regarding the legal propriety of this provision of the order.

7

It appears that Indiana Trial Rule 53.2, not Indiana Trial rule 53.1, is applicable here, where the trial court conducted a full evidentiary hearing on the outstanding issues. See Ind. Trial Rule 53.2 ("Whenever a cause . . . has been tried to the court and taken under advisement by the judge, and the judge fails to determine any issue of law or fact within ninety (90) days, the submission of all the pending issues and the cause may be withdrawn from the trial judge and transferred to the Supreme Court for the appointment of a special judge."). The evidentiary hearing was concluded on June 19, 2012, the in camera interview was conducted on July 10, 2012, and the trial court issued its order on August 24, 2012. Thus, the trial court did not exceed the ninety-day limit in Indiana Trial Rule 53.2. Accordingly, we are not convinced that Father was required to seek to have the case removed from the trial court judge before asking on appeal that these issues be remanded to the trial court.

Further, the issues of legal custody and contempt were substantive issues addressed by the parties at the hearing. See Tr. pp. 32, 69, 330, 336. They were not procedural matters upon which Father now seeks reversal. Cf. Watkins v. State, 446 N.E.2d 949, 963-64 (Ind. 1983) (holding that failure to rule on a motion for mistrial is not a basis for error on appeal); Minton v. State, 269 Ind. 39, 42, 378 N.E.2d 639, 641 (1978) (observing that, where no ruling was made on motion for continuance, "it cannot be assumed that the motion was denied, and by proceeding without a ruling and without protest, the defendant has waived any alleged error."); In re Paternity of Tompkins, 542 N.E.2d 1009, 1012 (Ind. Ct. App. 1989) (holding that error may not be predicated on the

8

failure of a trial court to rule on pre-hearing motion to dismiss). Thus, Father did not waive his right to have the trial court rule on these issues.

Mother also argues that she has legal custody pursuant to Indiana Code Section 31-14-13-1, which provides in part, "A biological mother of a child born out of wedlock has sole legal custody of the child, except as provided in IC 16-37-2-2.1, and unless a statute or court order provides otherwise . . . ." According to Mother, because the trial court did not rule otherwise and there is no statute changing legal custody from her to Father, she has legal custody of V.A. Under these circumstances, however, where the issue of legal custody was placed squarely before the trial court, we believe it prudent to remand for the trial court to expressly address the issue of legal custody.

As for Father's outstanding contempt petitions, "[a] party that is willfully disobedient to a court's order may be held in contempt of court." Witt v. Jay Petroleum, Inc., 964 N.E.2d 198, 202 (Ind. 2012). It is soundly within the discretion of the trial court to determine whether a party is in contempt. Id. Although the trial court's order addresses phone contact prospectively, it does not specifically address Father's contempt petitions. Thus, we also remand for the trial court to rule on Father's outstanding contempt petition.

### III. Child Support

Father argues that, because the trial court did not make any findings regarding child support other than that Father was underemployed, it is not clear whether the trial court deviated from the Child Support Guidelines when it ordered him to pay $60 per week in child support. Father, also argues that, if the $60 per week order is a deviation

from the Child Support Guidelines, the trial court did not support the deviation with written findings. See Ind. Child Support Rule 3 ("If the court concludes from the evidence in a particular case that the amount of the award reached through application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion."). Father asks that we remand for the trial court to provide a child support worksheet and, if necessary, enter findings supporting the deviation.

Indiana Child Support Guideline 3(B)(1) provides:

> In all cases, a copy of the worksheet which accompanies these Guidelines shall be completed and filed with the court when the court is asked to order support. This includes cases in which agreed orders are submitted. Worksheets shall be signed by both parties, not their counsel, under penalties for perjury.

However, neither party submitted a child support worksheet.[2] Further, Father's testimony about his work history, income, earning capability, and financial resources was unclear at best. Nevertheless, because the trial court did not make findings concerning the income it attributed to the parties or complete its own child support worksheet, we are not able to determine whether the trial court's order complied with the Child Support Guidelines. Accordingly, we remand for clarification of the child support award by showing either that the award complied with the Child Support Guidelines or that the award deviated from the guidelines and explaining the deviation. See Dye v. Young, 655 N.E.2d 549,

---

[2] In Dye, we recognized that a party's failure to file a child support worksheet should prevent "the non-complying party from challenging the income figures arrived at by the trial court." Dye v. Young, 655 N.E.2d 549, 550-51 (Ind. Ct. App. 1995).

10

551 (Ind. Ct. App. 1995) (remanding for clarification of child support award where it was not clear whether the award was based on the Child Support Guidelines and where there was no explanation for any deviation).

### *IV. Property*

For the first time on appeal, Father argues that the trial court did not have subject matter jurisdiction to address Mother's request for the return of certain personal property in the context of a paternity action. In K.S. v. State, 849 N.E.2d 538, 542 (Ind. 2006), our supreme court clarified that there are two types of jurisdiction—subject matter jurisdiction and personal jurisdiction. "'The question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs.'" Id. (quoting Troxel v. Troxel, 737 N.E.2d 745, 749 (Ind. 2000)). Father concedes, "Jefferson County Circuit Courts have the authority to hear all civil matters . . . ." Appellant's Br. p. 18. Thus, the trial court had subject matter jurisdiction to address the return of personal property, and Father's argument is better characterized as a claim of procedural error.

As our supreme court explained, "[t]he fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction." Id. at 541. Because Father did not object to the trial court's authority to consider Mother's request for the property, he may not raise the issue for the first time on appeal. See Troxel, 737 N.E.2d at 752 ("A party may not raise an issue for the first time in a motion to correct error or on appeal.").

11

**Conclusion**

The evidence supports the trial court's findings regarding domestic violence, physical punishment, and summer parenting time. We remand for the trial court rule on the issue of legal custody and Father's contempt petition. We also remand for the trial court to clarify the factual basis for its child support order and, if the award is a deviation from the Child Support Guidelines, to enter findings articulating the facts supporting that conclusion. Father's challenge to the trial court's authority to rule on Mother's request for personal property is untimely. We affirm and remand.

Affirmed and remanded.

NAJAM, J., and BAILEY, J., concur.