**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 14 2013, 5:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**CHRISTOPHER L. ARRINGTON**
**PAUL A. HADLEY**
Danville, Indiana

ATTORNEY FOR APPELLEE:

**JAMES L. LOWRY**
Kendall Wood Lowry & Kessinger
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DALJIT GILL,                           )
                                       )
    Appellant,                         )
                                       )
        vs.                        )    No. 32A01-1209-DR-436
                                       )
BALDISH GILL,                          )
                                       )
    Appellee.                          )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Karen M. Love, Judge
Cause No. 32D03-0905-DR-62
Cause No. 32D03-1012-CT-3

**August 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Daljit Gill (Wife) filed for and obtained dissolution of her thirteen-year marriage to Baldish Gill (Husband). Shortly over a year after entry of the dissolution decree, Husband filed for relief from judgment and then also filed a separate cause of action for fraud, alleging in both causes that Wife obtained the dissolution without his knowledge and by forging his name on several documents. In this consolidated appeal, Wife appeals several orders entered by the trial court, which ultimately resulted in the setting aside of the property distribution portion of the dissolution decree and an order for the sale of the marital residence.

We affirm.

The facts favorable to the judgment follow. Husband and Wife married in May 1996 in India and began residing together in California in 1997. Husband and Wife both obtained United States citizenship. They had three children together, born in 1998, 2000, and 2002.

Husband and Wife moved from California to Indiana in 2004 and purchased a home in Plainfield (the marital residence) for $205,000. They borrowed $55,000 for this purchase and made a down payment of $150,000. This resulted in a monthly mortgage payment of about $600. Both spouses worked during the marriage, and starting in 2006, Husband was gone for extended periods of time as a long-haul truck driver. He spent little time at home.

In July 2008, the marital residence suffered substantial property damage from a fire. The couple's insurance company issued three checks to Husband and Wife for the damage. Without Husband's knowledge, Wife negotiated the checks by endorsing them with both her

name and Husband's name.[1]  The funds were used to repair the residence and replace damaged items.  By this time, Wife's parents also lived in the marital home.  When Husband was home after being on the road, he stayed in a downstairs room and Husband and Wife rarely communicated.

On April 21, 2009, a warranty deed on the marital residence was executed purportedly transferring the property from both parties to Wife alone for no consideration (the Warranty Deed).  The Warranty Deed was filed with the Hendricks County Recorder on April 23, 2009.  Husband denies executing the Warranty Deed or even being aware of its existence until 2010.

On May 19, 2009, Wife filed for dissolution of marriage.  The record indicates that the summons was served by certified mail at the marital residence on June 10, but there is no evidence in the record of Husband's signature on the certified mailing receipt.  Husband denies signing for the summons.

Thereafter, Wife met with her attorney and obtained a waiver of final hearing and settlement agreement (the Settlement Agreement), which she ostensibly took home with her to present to Husband for his signature.  The Settlement Agreement provided that Wife would essentially keep all the marital property, including two vehicles and the marital residence, and Husband would be left with the personal property in his possession.  At the time, the marital residence had a mortgage of about $55,000.  On August 18, 2009, the

---

[1]  Wife steadfastly maintained that she had not signed Husband's name on these checks but then recanted minutes before the trial began, admitting that she had signed the checks to look as if her husband had signed them.

executed Settlement Agreement was filed with the court. The court's approval of the Settlement Agreement was delayed until certificates of completion of the court-ordered "Our Children-Our Divorce" class were filed. These certificates were filed on September 28, 2009.[2] The trial court then approved the Settlement Agreement and issued its Decree of Dissolution of Marriage (the Decree) on October 1, 2009.

At some point after the issuance of the Decree, Wife apparently transferred title to the marital residence to her father, Harpal Singh, in exchange for him paying off the mortgage. Wife continued to live in the residence with her children and parents, and she evidently remarried in July 2010. Singh died testate on September 19, 2010. Although the will had yet to be probated by the time of the final hearing, Wife does not dispute that Singh left the marital residence to her.

Shortly before Singh's death, when Husband came home in August 2010, Wife and her parents confronted Husband with the Decree and told him to leave the house. They indicated that the house was no longer his and that if he came back they would call the police. Husband loaded his personal belongings in his truck and returned to California. Shortly thereafter, Husband and his brother researched the property records and discovered the Warranty Deed.

On October 20, 2010, Husband filed a motion for relief from judgment under the dissolution cause number (the Dissolution Case), alleging, inter alia, that he had not been served with process, had not learned of the Dissolution Case until recently, and had not

---

[2]  Husband denies attending this class on September 14, 2009, as indicated by the certificate.

4

executed the Settlement Agreement. In sum, he alleged that the Decree had been obtained by fraud. Wife filed a motion to dismiss on December 1, 2010, claiming that Husband's motion was not timely under Indiana Trial Rule 60(B)(3) because it was filed more than one year after the Decree was entered. Husband responded on December 3, arguing that the trial court had the right, independent of the limitations set out in Rule 60(B), to entertain an action for fraud upon the court. The trial court denied Wife's motion to dismiss on December 7, 2010.

On December 10, 2010, Husband filed a complaint for fraud under a separate cause number (the Civil Case), requesting monetary damages for Wife's alleged fraud with regard to Husband's forged signature on the Settlement Agreement, the Warranty Deed, and other documents. Wife filed a motion to have the Civil Case and the Dissolution Case consolidated for hearings because the cases "alleg[e] the same fraudulent acts…and offer the same evidence". *Appendix* at 81. Husband did not object, and the trial court granted the motion to consolidate.

On September 4, 2012, the trial court held a consolidated hearing.[3] The parties presented vastly opposing testimony. Essentially, Wife testified that Husband signed all of the challenged documents and was fully aware of the Dissolution Case. Husband testified to the contrary. Both parties called their own handwriting experts.

In its joint order of September 11, 2012, the trial court found that Wife's expert was not credible and that Husband did not sign the Settlement Agreement (including a waiver of

---

[3] Prior to this hearing, the parties entered into an agreed entry regarding child support, which is not at issue in this appeal.

final earing) or the Warranty Deed. The trial court concluded: "Wife obtained a divorce from Husband by fraud on him and fraud on the Court." *Id*. at 15. Indicating that it was doing so under the Civil Case, the trial court then set aside the fraudulent Settlement Agreement and relieved Husband of the resulting property settlement portion of the Decree. The court set the matter for further hearing regarding the division of property and any further damages and/or fees.

Following a hearing on November 14, 2012, the trial court ordered the sale of the marital residence with the proceeds to be distributed as follows:

a) First, the sum of $55,000.00 shall be paid to the estate of Harpal Singh to reimburse the estate for mortgage payment made on said property;

b) Second, the sum of $19,016.95 to be paid to [Husband] as reimbursement for his attorney fees…;

c) Third, the sum of $10,300.00 to be paid to [Husband] as reimbursement for the expert witness fee that he paid…;

d) That the net proceeds remaining after the payment of the aforementioned items shall be divided between the parties fifty/fifty (50/50).

*Id*. at 18.[4] With Wife's express consent, the court appointed a real estate commissioner to sell the marital residence. Wife now appeals.

1.

Before reaching the procedural issues raised in this case, we address quickly Wife's slender argument that Husband failed to establish that she committed extrinsic fraud[5] upon

---

[4] The court also distributed other property between the parties and ordered that the clerk withhold $25,000 of Husband's proceeds from the sale of the home pending the determination of his support arrearage.

[5] "Fraud has been defined as extrinsic if the fraudulent matter prevents a trial of the issue in the case or improperly procures the court's jurisdiction." *In re Marriage of M.E.*, 622 N.E.2d 578, 582 (Ind. Ct. App. 1993).

6

him or fraud upon the trial court.[6]  In this regard, she claims that Husband failed to present any evidence that Wife was the one who in fact forged his name on the challenged documents, as opposed to some other person.[7]

Wife's argument is disconcerting.  The evidence favorable to the judgment reveals that Husband's signature was forged a number of times on key documents relating to the Dissolution Case.  These forgeries resulted in Wife obtaining, without Husband's knowledge, title to the marital residence and dissolution of marriage to Husband.  It matters little who penned the forgeries, as the only reasonable inference is that Wife was actively involved in the fraud being perpetrated on Husband and the trial court.  Moreover, Husband's handwriting expert, rebutting Wife's expert, testified that there were "indications" leading to "reasonable suspicion" that Wife might have written the questioned signatures. *September 4, 2012 Transcript* at 91.  The instant case is a prime example of fraud on the court.

2.

We now turn to Wife's argument that the court should have dismissed the motion for relief from judgment because it was filed more than a year after the Decree was issued. There are three ways to attack a judgment on the grounds of fraud on the court pursuant to

---

[6]  The doctrine of fraud on the court is narrowly applied and limited to egregious circumstances where an unconscionable plan or scheme is used by a party to improperly influence the court's decision and where such acts prevent the losing party from fully and fairly presenting his case.  *See Rocca v. Rocca*, 760 N.E.2d 677 (Ind. Ct. App. 2002), *trans. denied*.

[7]  Wife also asserts that the trial court "erred when it did not make required finding of facts to establish whether Husband proved the required elements to maintain an independent action based upon fraud." *Appellant's Brief* at 13.  Our review of the record indicates that neither party requested special findings pursuant to Indiana Trial Rule 52(A).  Therefore, the trial court was not required to enter findings and to the extent it did "the specific findings control only as to the issues they cover." *Humphries v. Ables*, 789 N.E.2d 1025, 1030 (Ind. Ct. App. 2003).

T.R. 60(B):

> The first method is by way of a motion filed under Trial Rule 60(B)(3). Such a motion may be based upon any kind of fraud—albeit intrinsic, extrinsic, or fraud on the court—so long as it is chargeable to an adverse party and has an adverse effect on the moving party. However, the motion is generally limited to the court in which the judgment was rendered and shall be made not more than one year after the judgment was entered. The *Stonger* court observed that, if the time limit for the 60(B)(3) motion has not expired, this procedural tool is the preferable way to challenge a judgment on grounds of fraud on the court.
>
> The second method is an independent action for fraud on the court pursuant to the savings clause of Trial Rule 60(B), which provides that this rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court. Independent actions are usually reserved for situations that do not meet the requirements for a motion made under Rule 60(B)(3). For example, the fraud might not be chargeable to an adverse party, the movant might be seeking relief from a court other than the rendering court, or, more often, the one-year time limitation for Trial Rule 60(B)(3) motions has expired. An independent action is subject to the doctrine of laches and its remedy is extremely limited.
>
> The third method, which also arises out of the savings clause of Trial Rule 60(B), invokes the inherent power of a court to set aside *its* judgment if procured by fraud on the court. Relief in these circumstances is not dependent upon the filing of a motion by a party to the original judgment. Rather, the court may assert this power *sua sponte.* In addition, there is no time limitation for these proceedings.

*Shepherd v. Truex*, 823 N.E.2d 320, 325 (Ind. Ct. App. 2005) (some citations omitted).

Although Husband was foreclosed from asserting fraud based upon the first method, the two other methods remained available to him. Further, it is evident, and Wife does not dispute, that Husband's motion for relief from judgment alleged facts sufficient to support a claim of fraud on the court.

In a rather undeveloped argument, Wife asserts that Husband could not rely on the savings clause of T.R. 60(B) because he had other remedies available to him to set aside the

property division in the Decree, specifically Ind. Code Ann. § 31-15-7-9.1 (West, Westlaw current with all 2013 legislation).  I.C. § 31-15-7-9.1 expressly limits the revocation or modification of property disposition orders to cases of fraud and further places a six-year limitation on such claims of fraud.[8]

Husband's fraud allegations asserted in the Dissolution Case via the motion for relief from judgment do not violate the limitations set out in the statute.  Contrary to Wife's apparent assertion, Husband's motion for relief from judgment does not constitute a collateral attack.[9]  Husband's motion, further, does not indicate whether the fraud claim is being asserted under T.R. 60(B), I.C. § 31-15-7-9.1, or both.  Regardless, we fail to see why the two would be mutually exclusive when asserted under the original cause number. Accordingly, we conclude that the trial court properly denied Wife's motion to dismiss Husband's motion for relief from judgment.

3.

Wife next argues that the trial court erred by ordering modification of the property disposition under the Civil Case rather than the Dissolution Case.  Under the circumstances

---

[8]  The statute provides:

> (a) The orders concerning property disposition entered under this chapter (or IC 31-1-11.5-9 before its repeal) may not be revoked or modified, except in case of fraud.
> (b) If fraud is alleged, the fraud must be asserted not later than six (6) years after the order is entered.

*Id*.

[9]  Wife directs us to *Dodd v. Estate of Yanan*, 625 N.E.2d 456 (Ind. 1993), where the wife filed a fraud claim in probate court to attack the dissolution decree on the basis of fraud committed by (now deceased) husband. Our Supreme Court held that the wife had to apply for modification of the divorce decree in the dissolution action under I.C. § 31-1-11.5-17 rather than collaterally attack the decree in probate court.  *Dodd* is inapposite for at least two reasons.  First, it involved a collateral attack of a judgment in a sister court.  Second, the fraud allegations did not involve fraud on the court.

9

presented here, we find that this is a distinction without a difference.

Indiana Trial Rule 42 allows trial courts to consolidate separate actions when the cases involve a common question of law or fact. Generally, consolidation "does not merge the suits into a single cause or change the rights of duties of the parties." *Clarkson v. Neff*, 878 N.E.2d 240, 245-46 (Ind. Ct. App. 2007) (quoting *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 55 (Ind. Ct. App. 1993), *trans. denied*), *trans. denied*. This is because "consolidation under Rule 42 usually occurs in cases where the issues between the cases are very similar but different parties are involved, or where at least one of several issues in two cases are similar." *Id*. at 246. "[W]here consolidated cases present varied issues or affect different parties, it makes sense that the consolidated cases retain distinct identities." *Id*. The cases need not retain distinct identities, however, where the parties and issues are identical. *See Clarkson v. Neff*, 878 N.E.2d 240.

As set forth above, the two actions at issue here were consolidated by Wife's motion because, in her own words, the cases "alleg[e] the same fraudulent acts…and offer the same evidence". *Appendix* at 81. Aside from their cause numbers, there is no material difference between the actions, and the trial court's joint resolution of the fraud allegations was appropriate. The property disposition portion of the Decree was properly set aside in the September 11, 2012 order based upon Wife's fraud on the court. It is of no moment that the trial court referenced the Civil Case rather than the Dissolution Case because by that time the cases were effectively one and the same.

10

4.

Finally, Wife argues that the trial court lacked jurisdiction to order the marital residence sold because the property had been transferred to her father and his estate had not been made a party to the underlying proceedings. She claims the estate was never put on notice that its property rights could be affected. In sum, Wife argues that the trial court "lacked [p]ersonal [j]urisdiction" over her father's estate. *Appellant's Brief* at 25. It is undisputed, however, that the estate was not made a party to the instant action and the court had personal jurisdiction over the named parties, Wife and Husband.

We initially observe that the record is devoid of any deed purporting to transfer the property in question to Singh. The parties seem to agree, nonetheless, that the property was transferred to him at some point. The parties also agree that the will, which gave the property back to Wife, had not been probated. Indeed, Wife's attorney indicated that the estate was intentionally being held up by Wife until the instant case was complete and it was known what "the judge was going to do with the property." *November 14, 2012 Transcript* at 65.

Wife fails to explain how she is in a position to challenge the judgment for lack of jurisdiction over the unopened estate, which she (like Husband) never attempted to join in the action. Moreover, to the extent her claim of error has any merit, we conclude that Wife waived and/or invited it below. To be sure, Wife listed the residence as property of the marital estate subject to division.[10] Moreover, she did not object when the trial court

---

[10] Wife listed the residence in her proposed division of property and claimed that it should be set off to her. Further, at the final hearing, Wife's attorney stated: "the assets of the parties consist of the marital home, the

11

indicated at the conclusion of the final hearing that it was going to order the marital residence sold, and she expressly indicated, by counsel, that she had no objection to the court appointing a commissioner to sell the real estate. Under the circumstances, she cannot now be heard to complain.

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.

---

furnishings, their vehicles, and [] all personal property has actually already been divided." *November 14, 2012 Transcript* at 10.